Catherine Knox, Executrix of the Last Will and Testament of Isabelle Cooney, Deceased, Appellant, v. William Maher and Pleasant Plains State Bank, Appellees.*

Gen. No. 8,319.

Opinion filed June 11, 1929.

---

* This case which was formerly published as an abstract (254 Ill. App. 626) is now directed by the court to be published in full,

BARBER & BARBER, A. M. FITZGERALD and H. C. MOORE, for appellant.

O. B. IRWIN and DOYLE, SAMPSON &.GIFFIN, for appellees.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an appeal by Catherine Knox, executrix of the estate of Isabelle Cooney, deceased, from the judgment of the circuit court of Sangamon county, directing the Pleasant Plains State Bank to deliver to appellee William Maher a certain promissory note held by said bank, but claimed by said executrix as assets of the estate of said deceased. The case was in the circuit court upon appeal from the probate court and by stipulation of the parties the cause was heard in the circuit court upon a transcript of evidence and proceedings had in the probate court. The leading and undisputed facts are substantially as follows:

Isabelle Cooney in her lifetime lived near the village of Pleasant Plains in Sangamon county, and William Maher, a much younger person, practically grew up in her home; in fact, he was commonly known in the neighborhood as "Billy Cooney." Some years before her death Mrs. Cooney loaned $4,300 to a neighboring farmer, Frank Hergenrother. Upon a renewal of the note and desiring, as it is admitted, to make a gift to William Maher, Mrs. Cooney, together with said Frank Hergenrother, went to the Pleasant Plains State Bank and by their direction a promissory note was prepared by George Purvines, the cashier of said bank, in words and figures as follows:

"$4300.00                                     Nov. 25th, 1922.
                  Pleasant Plains, Ill.

"Five years after date I promise to pay to the order of . . . Mrs. L. C. Cooney or Wm. Maher, in event of the death of Mrs. L. C. Cooney.

Forty-three Hundred.................. no Dollars

THE PLEASANT PLAINS STATE BANK
Pleasant Plains, Illinois.

"Value received with interest at the rate of 3 per cent from date until paid.

Frank Hergenrother."

The note, after being executed, was left by direction of Mrs. Cooney with the bank for safe-keeping, but without any specific order as to the delivery thereof. Mr. Purvines put the note in an envelope, containing no other papers, and placed the same in a cabinet in said bank consisting of open boxes, lettered from A to Z, and in the particular box marked "C." Mrs. Cooney had other papers in the bank, but the same were in no manner attached to said envelope. Purvines stated that he considered that the bank was holding the note for all the parties thereto as their interests might appear, which the court held, however, was incompetent.

Mrs. Cooney died testate on or about December 20, 1923, and her will was duly probated in the probate court of said Sangamon county. At various times after the making of said note she expressed her wish that the amount thereof should be paid to William Maher, of whom apparently she was always very fond.

On January 16, 1928, the executrix filed a petition in the probate court under section 81 of the Administration Act, Cahill's St. ch. 3, ¶ 82, for a citation against said Pleasant Plains State Bank to show cause why said note should not be delivered up to said executrix as assets of said estate, and also prayed therein that said Frank Hergenrother and William Maher be notified, and such citation was duly issued and the parties thereto served. In the petition it was expressly stated that said promissory note was intended as "an expression of a desire to make a gift to said William Maher," but it was alleged that "said gift was never effected by the delivery of the possession of said note to said William Maher."

The bank answered said petition, admitted that it held the note and asked the direction of the court relative thereto. Frank Hergenrother did not answer. William Maher filed an intervening petition and answer setting up that both as a gift to him from Mrs. Cooney, and also by virtue of the contract between her and Frank Hergenrother, said note and the right to collect the same became his own exclusive property.

Upon the hearing in the probate court there was no dispute as to the facts which were as above set forth, and which were testified to by said George Purvines and Frank Hergenrother. There, as here, the sole question was as to the legal right under the facts which were undisputed.

The probate court on March 26, 1928, at the March term, 1928, thereof, entered an order denying the petition of said executrix, finding that the note in question was the property of William Maher and ordering said bank to deliver said note to said William Maher. Neither at the time of entering said judgment nor at any time thereafter did the petitioner pray any appeal in the probate court to the circuit court. But on April 12, 1928, that is to say, at a subsequent term of said probate court, and without any previous order therefor, the appellant herein presented to the judge of the probate court an appeal bond in the sum of $200 for an appeal to the circuit court, which bond was thereupon approved by the probate court and a transcript of record ordered.

Pursuant to that order the transcript of proceedings in said probate court was prepared and certified to the circuit court. And thereupon the said appellee William Maher, limiting his appearance to the special purpose involved, entered his motion in the circuit court to dismiss said attempted appeal from the probate court for the reasons: (a) that no motion or order for such appeal was ever made or entered at the term

of said probate court wherein the judgment attempted to be appealed from was rendered; and, (b) that after the term at which said judgment was entered, and without an order entered during said judgment term, the probate court had no further jurisdiction to allow said appeal. Upon an entering of said motion to dismiss the appeal the circuit court denied the same, to which order the said appellee William Maher duly excepted and at the same term a bill of exceptions was duly allowed showing the action on said motion to dismiss.

Thereafter in the circuit court, as already indicated, it was stipulated that the cause might be heard upon the transcript of proceedings and evidence heard in the probate court, and such hearing was accordingly held. The circuit court entered a judgment substantially as was entered by the probate court, finding that said William Maher was the owner of and entitled to possession of the said note and ordering and directing that the Pleasant Plains State Bank deliver the same to said William Maher, and directing the dismissal of said petition. From that judgment the appellant prosecutes this appeal.

It is first contended by appellee upon cross error filed that the circuit court of Sangamon county erred in not dismissing appellant's appeal to that court for the reason that no appeal was taken by appellant from the probate court within the term at which the judgment was rendered. Appellant attempted an appeal in the manner provided for taking appeals from justices of the peace. It is contended that it did not effect an appeal. No order was entered allowing an appeal, fixing the amount of the bond or taking an appeal during the term at which the final order was entered. Appellant contends that the appeal was taken under section 124 of the Administration Act, Cahill's St. ch. 3, ¶ 126, and should be perfected in the same manner as

appeals are perfected from a judgment of a justice of the peace, citing: *Mundy v. Mundy,* 230 Ill. App. 266, 269.

There have been various interpretations of the statutes upon this subject by the different Appellate Courts, but no late case of the Supreme Court specifically discussing this question except *Hall v. First Nat. Bank,* 330 Ill. 234. Appellee contends and presents that under the Constitution of 1818, provision was made for the selection of justices of the peace to exercise such jurisdiction as the General Assembly might provide (secs. 1 and 8, article IV, Constitution 1818), and that pursuant thereto justices of the peace were provided for by a statute enacted in 1845 (ch. 59, stat. 1845), and by another statute enacted in the same year provision was made for a court of probate in each county to be presided over by a justice of the peace. That statute provided that appeals might be taken from the court of such probate justice in the same manner and with like effect as appeals from the judgments and decisions of other justices of the peace (stat. of 1845, pp. 426–429).

The Constitution of 1848 provided for the creation of the county court with jurisdiction in probate matters and to be presided over by a county judge (secs. 16 and 17, article V, Constitution 1848). Under that constitution and by an act passed in 1849 (Laws 1849, pp. 62–67) county courts were established. By that act it was provided that the jurisdiction of the probate courts theretofore existing should be transferred to the county courts and that appeals from the judgments of such courts might be taken "in the manner prescribed by law," and section 13 of that act provided that such appeals might be taken as in case of similar judgments rendered by the probate court. It is contended that by statute the appellate procedure of the newly created county courts in probate matters was

expressly made to conform to the practice theretofore prevailing and existing in the probate courts, and such probate courts were essentially justice of the peace courts; they were not courts of record.

The Constitution of 1870 continued the county courts (sec. 1, article VI), vested them with probate jurisdiction (sec. 18, article VI) and provided that appeals might be allowed from their judgments, "as may be provided by law" (sec. 19, article VI), and also authorized the General Assembly to provide for the establishment of probate courts (sec. 20, article VI). Section 29 of article VI further provided:

"All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform." This provision of the Constitution and its relation to courts has been considered and applied in *Kingsbury v. Sperry,* 119 Ill. 279, 286; *Dawson v. Eustice,* 148 Ill. 346; *People v. Hibernian Bank Ass'n,* 245 Ill. 522, 524; *Pence v. Pettett,* 211 Ill. App. 588.

It was held in *Dawson v. Eustice, supra,* and *Kingsbury v. Sperry, supra,* that the probate court, when established, and the county courts in other counties, as respects all matters of probate and the application of guardians to sell or mortgage lands of minors, are of the same class or grade.

Under the Constitution of 1870, the Administration Act was passed in the year 1872, Cahill's St. ch. 3, the provisions whereof throughout assume that the same would be executed by the county courts. That act contained two sections with regard to appeals. The first of said sections, being section 68 (Cahill's St. ch. 3, ¶ 69), provided that:

"In all cases of the allowance or rejection of claims by the county court, as provided in this Act, either

party may take an appeal from the decision rendered to the circuit court of the same county, in the same time and manner appeals are now taken from justices of the peace to the circuit courts, by appellant giving good and sufficient bond, with security, to be approved by the county judge; and such appeals shall be tried *de novo* in the circuit court.''

And section 124 of said Act, which is also a copy of section 138 of the Wills Act of 1845, provides as follows (Cahill's St. ch. 3, ¶ 126):

"Appeals shall be allowed from all judgments, orders or decrees of the county court, in all matters arising under this Act, to the circuit court, in favor of any person who may consider himself aggrieved by any judgment, order or decree of such court, and from the circuit court to the supreme court, as in other cases, and bonds with security to be fixed by the county or circuit court, as the case may be.''

From the above it thus appears that up to the time of the adoption of the Administration Act in 1872, the appellate practice in probate matters was essentially the same as that prevailing in the courts of justices of the peace.

In the year 1874, however, our present county courts were reorganized by an Act approved March 26th of that year and entitled, "An Act to extend the jurisdiction of county courts and to provide for the practice thereof, to fix the time for holding the same, and to repeal an Act therein named.'' By that statute the county courts as now existing were completely reorganized. After providing for the establishment and jurisdiction of said courts, including all matters of probate, section 122 of said Act contains the following with respect to appeals (Cahill's St. ch. 37, ¶ 321):

"Appeals may be taken from the final orders, judgments and decrees of the county courts to the circuit courts of their respective counties in all matters, ex-

cept as provided in the following section, upon the appellant giving bond and security in such amount and upon such conditions as the court shall approve, except as otherwise provided by law. Upon such appeal the case shall be tried *de novo.*"

The probate courts were created by an act approved April 27, 1877, entitled "An Act to establish probate courts in all counties having a population of 70,000 or more, to define the jurisdiction thereof, and to regulate the practice therein, and to fix the time for holding the same." (Cahill's St. ch. 37, ¶¶ 331–354.)

After providing for the establishment of such courts, and fixing the jurisdiction thereof to include all probate matters concurrently with the county courts, said Act contains the following provisions in section 11 thereof with respect to appeals to the circuit court (Cahill's St. ch. 37, ¶ 341):

"Appeals may be taken from the final orders, judgments and decrees of the probate courts to the circuit courts of their respective counties in all matters except in proceedings on the application of executors, administrators, guardians and conservators for the sale of real estate, upon the appellant giving bond and security in such amount and upon such condition as the court shall approve, and upon such appeal the case shall be tried *de novo.*"

Under the reorganization of the county court in 1874 and the establishment of the probate court in 1877, each was made for the first time a court of record.

In *Mundy v. Mundy,* 230 Ill. App. 266, 269, cited by appellant, the court holds:

"In a case of this kind the right to appeal is governed by section 124 of the Administration Act (Cahill's Ill. St. ch. 3, ¶ 126.) Any person who may feel himself aggrieved by the judgment of the county court may appeal whether he is a party to the record or not. *Collins v. Kinnare,* 89 Ill. App. 236; *Weer v. Gand,*

88 Ill. 490. The appeal may be perfected in the same manner as appeals from justices of the peace. *Beardsley v. Hill*, 61 Ill. 354. It is not necessary that an appeal should be prayed in the county court or that the court should enter an order allowing the appeal. *Fix v. Quinn*, 75 Ill. 232; *Haaren v. Miller*, 139 Ill. App. 405. It necessarily follows that appellant had a right to appeal without the other respondents' signing the appeal bond."

Mr. Justice Dibell, in the case of *Pence v. Pettett*, 211 Ill. App. 588, gave a great deal of consideration to the construction of these various statutes for appeal, and on page 592 held: "If section 68 of the Administration Act (J. & A. ¶ 117) applies to appeals from the allowance or rejection of claims by the Probate Court, then the bond given in this case was insufficient because not double the amount of the judgment and costs. We see no escape from the conclusion that by section 8 of the Probate Court Act (J. & A. ¶ 3266) the Administration Act is embodied therein. If so, there is one general provision for appeals under section 11 of the Probate Court Act (J. & A. ¶ 3269), and a special and different provision for appeals from the allowance or rejection of claims under section 68 of the Administration Act (J. & A. ¶ 117). This does not create any new or unusual condition, for section 124 of the Administration Act (J. & A. ¶ 173) contains a general provision for appeals differing from that of section 68 in regard to appeals from the allowance or rejection of claims. Until the Probate Court Act was passed, the administration of the estates of deceased persons had been for many years conducted in the County Courts and is yet so conducted in most of the counties of the State; yet the County Court Act in section 122 (J. & A. ¶ 3248) has a general provision for appeals upon appellant giving bond and security in such amount and upon such con-

ditions as the court shall approve. It therefore appears that before the Probate Court Act was adopted there were two general provisions for appeals, one in the County Court Act and one in the Administration Act, and also a different provision specially limited to the allowance or rejection of claims."

This gives an entirely different construction to section 124 of the Administration Act than is presented in *Mundy v. Mundy, supra.* We are not concerned with Mr. Justice Dibell's holding that section 68 of the Administration Act is still in force, applying to a separate and special class of cases, as that question does not arise in this case. Neither are we concerned whether section 8 of the Probate Court Act, Cahill's St. ch. 37, ¶ 338, has effected an "embodiment" of the Administration Act. That section reads:

"The process, practice and pleadings in said court (probate court) shall be the same as those now provided or which may hereafter be provided, for the probate practice in the county courts of the State, and all laws now in force or which may hereafter be enacted, concerning wills or the administration of estates, shall govern and be applicable to the practice in the probate courts of the State." The County Court Act contained a section somewhat similar. If section 124 of the Administration Act is to be construed as providing for appeals in manner as taken before justices of the peace, how can it be said that the Probate Act and the County Court Act took over that section with its construction, when, in each of the new acts the General Assembly provided for appeals to be taken in an entirely different manner? If appellant's construction of section 124 of the Administration Act is correct, then we are in the anomalous position in probate matters of having one method of appeal provided for in the Administration Act and an entirely different method of appeal provided in both the County Court

Act and the Probate Act. If this is the situation, then one of two results must follow: either the provisions of the Constitution have been violated and the practice is not uniform, or the sections providing for appeal in the County Court Act and Probate Court Act have never been adopted and are void. The latter result cannot follow for the reason that the court held in *Hall v. First Nat. Bank, supra,* that the appeal was properly taken under section 122 of the County Court Act.

In *Hall v. First Nat. Bank, supra* (330 Ill. 235), one W. C. Hall filed his petition to set aside the will of Thomas N. Hall, deceased. The county court denied the petition and petitioner prayed and was allowed an appeal and the court fixed the amount of the bond, but no time was fixed within which the bond should be presented and filed. The bond was not presented and filed during the term. It was held that the appeal should be dismissed. In *Pence v. Pettett, supra,* the court held that the provisions of section 124 of the Administration Act and the provisions for appeal in the County Court Act and the Probate Act all provided for the appeal to be taken in substantially the same manner. Under section 124 of the Administration Act the appeal is to "be allowed . . . in all matters arising under this Act . . . as in other cases, and bonds with security to be fixed by the county or circuit court, as the case may be." "The appeal is to be allowed." This presumes an order of court. Under section 16 of the Wills Act it is provided that "appeals may be taken," etc., and under section 68 of the Administration Act the provision is: "Either party may take an appeal," etc. The term "as in other cases" is in connection with the phrase "and from the circuit court to the supreme court, *as in other cases,*" and as the statute of 1845 has been rewritten the phrase has no reference to the appeal from the county or probate

court to the circuit court. The "bond with security" is to be fixed by the county or probate court when the appeal is to the circuit court, and is to be fixed by the circuit court when the appeal is to the supreme court "as the case may be." It is to be noted that the "bond with security is to be fixed by the *court*." In a court of record this requires an order of court. In appeals from justices the bond is fixed by law and is merely filed with and approved by the justice of the peace or the clerk of the court to which the appeal is taken. It requires no judicial act. The Act of 1845 from which section 124 descended, reads as follows:

"Sec. 138. Appeals shall be allowed from all judgments, orders or decrees of the court of probate, to the circuit court, in favor of any person who may consider himself or herself aggrieved by any judgment, order or decree of the court of probate as aforesaid, and from the circuit court to the supreme court, as in other cases."

As we have seen, when the probate court was presided over by a justice of the peace appeals were taken in the manner of justices of the peace. Since the court of probate has become a court of record, the appeals should be taken in accordance with the statute and in a manner becoming the dignity of a court of record.

While there has been some contrariety of opinions in the early cases, it is the opinion of this court that appellant never perfected an appeal of the cause from the probate court to the circuit court of Sangamon county, and that the appeal should have been dismissed by the circuit court.

Coming to the merits of the controversy, appellant contends that the transaction represented merely an unexecuted gift and the beneficial interest in the note not intended to pass to appellee until the decease of Isabelle Cooney, if ever, rendered the provision testamentary and invalid under the statute of wills. Ap-

pellant contends there was no delivery or acceptance of the gift. It is conceded by all parties that the deceased intended and desired to give the principal of the note to appellee if she should die before the note became due. It was not intended as a gift *causa mortis,* for while Isabelle Cooney was about 80 years of age when the note in question was executed, still she was in the enjoyment of good health for a woman of her age. But we think there is another principle operative in this case that counsel on neither side have fully developed. By the Act of 1919 the legislature did not expressly abolish joint tenancies with the right of survivorship in personal property, but it passed an act providing as follows:

"Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common," etc., except as to deposits in banks, etc. Cahill's St. ch. 76, ¶ 2.

The note in question, being an instrument in writing, does not in any manner express an intention to create a joint tenancy with the right of survivorship, as "joint tenants have one and the same interest accruing by one and the same conveyance, commencing at one and the same time and held by one and the same undivided possession." 2 Blackstone, 179.

At no time was the interest of Isabelle Cooney and appellee in said note the same. By the terms of said note the interests were diverse and the beneficial interests commenced, or rather accrued, conditionally at different times. This note had no terms that affected executors or trustees, and did not express an

intention to create a joint tenancy. The full purpose of this statute was to abolish the incident of survivorship, except as to executors, trustees and where "by will or instrument in writing, expressing an intention to create a joint tenancy," etc. but the statute further reads, after abolishing the incident of survivorship: "And all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common." It may be said that although the instrument in writing did not express an intention to create a joint tenancy, yet, that in some manner, by gift, contract, trust or otherwise, about which in this case there has been a great deal of contention, the note or "instrument in writing" did vest appellee with some kind of an interest in the note, which by the statute, has ripened into a tenancy in common. The answer to this is complete. The fund and indebtedness for which the note in question was given was the property of Isabelle Cooney. The note in question was made payable to "Mrs. L. C. Cooney (Isabelle Cooney) or William Maher in event of the death of Mrs. L. C. Cooney." Appellee had no interest in the subject matter except by the "gift" or "novation" attempted to be made by this note. Appellee's only possible interest in the subject matter could accrue by his life surviving that of Isabelle Cooney's life. If appellee died first, the note would be paid to Mrs. L. C. Cooney and that would end the matter. If Isabelle Cooney died first then appellee would take by right of survivorship and by that right only. But we have seen that the legislature passed this act for the very purpose of avoiding the evil of the right or incident of survivorship and abolished the same, except in the instances pointed out, and therefore appellee never entered into the ownership of said note in any manner. Except for the statute quoted and the laws of the State, under the proofs submitted appellee's interest could be established on

the theory of contract and novation, as under the statute the law is applied to bank deposits payable to two or more persons, and by survivorship.

Appellee in this cause has filed a cross error and brought the record of the circuit court of Sangamon county by bill of exception, taken in apt time, to this court, assigning error on the ground that the circuit court of Sangamon county did not dismiss appellant's appeal from the probate court to the circuit court. Appellee, appearing specially in the circuit court, at his first opportunity moved to dismiss the appeal of appellant to that court. From what has been said it is the opinion of this court that the circuit court erred in not dismissing appellant's appeal from the probate court, and appellee can properly raise that question on his assignment of cross error. Cahill's St. ch. 110, ¶ 107. In *Pelouze v. Slaughter,* 241 Ill. 215, 224, the court held:

"The purpose of the statutory assignment of cross-errors is to enable the court to finally decide the controversy without necessitating a separate appeal or writ of error. Formerly there was no right to assign cross-errors, but any party deeming himself aggrieved by a judgment or decree was compelled to take an appeal or sue out a writ of error. An appellee or defendant in error was not allowed to assign cross-errors except with the consent of the appellant or the plaintiff in error. (*Smith v. Sackett,* 15 Ill. 528.) In *Carter v. Moses,* 40 Ill. 55, the appellee asked leave to assign cross-errors, but the court said that in a chancery case an appeal brought the whole case before the court and it would be considered upon its merits without the assignment of cross-errors. In any case a party was permitted to prosecute a writ of error although the opposite party had appealed from the same judgment, and one of the proceedings did not affect the other but both might progress at the same time. (*Harding*

*v. Larkin,* 41 Ill. 413.) In 1869 an act was passed which provided that the appellee or defendant in error should have the right to assign cross-errors, and the court should proceed in the disposition of the case in the same manner as when cross-errors were assigned by consent. (Laws of 1869, p. 163.) Afterward, in *Page v. People,* 99 Ill. 418, where the question arose on demurrer to a plea in bar of the writ of error, it was held that it was optional with an appellee or defendant in error to assign cross-errors or prosecute an appeal or writ of error separate and independent of that of his adversary; that if a party assigned cross-errors he could not afterward prosecute a writ of error upon the same record, but if he did not assign cross-errors he was not barred from prosecuting a writ of error. In general, the cases holding that a party can only protect his right by assigning cross-errors have been where the decree or judgment did not give the party all the relief that he claimed or gave to his adversary more than he was considered entitled to, and where the appellee or defendant in error might have taken an appeal or prosecuted a writ of error.''

It is only in cases of this kind where parties join in trying the cause in the circuit court *without any objection to the jurisdiction of the court* that they are held to have waived the error. (*Grier v. Cable,* 159 Ill. 29, 31; *Stafford v. Stafford,* 299 Ill. 438, 445; *Wabash R. Co. v. People,* 196 Ill. 606, 611; *Eggleston v. Royal Trust Co.,* 192 Ill. 101, 102; *Chicago Portrait Co. v. Chicago Crayon Co.,* 217 Ill. 200, 202; *Jenkins v. Congreve,* 92 Ill. App. 271.) And in *Bennett v. Karasik,* 164 Ill. App. 362, the court held: ''If a party relies upon a waiver to the question of jurisdiction upon failure to file an appeal bond in apt time, he must show by the bill of exceptions that some step was taken prior to the motion to dismiss which effected such waiver.''

From what has been said, it is apparent that no appeal was actually taken and perfected in accordance with the requirements of the statute from the judgment of the probate court; that the circuit court, therefore, was without jurisdiction to proceed to a trial of the case *de novo*.

The judgment of the circuit court is, therefore, reversed and the cause remanded to the circuit court of Sangamon county, with directions to dismiss appellant's appeal to said court from the probate court.

*Reversed and remanded with directions.*