## C. M. JOINER v. MRS. L. A. JOINER.

No. 7040.   Decided February 2, 1938.
(112 S. W., 2d Series, 1049.)

*D. A. Frank,* and *Hamilton, Hamilton & Turner,* all of Dallas, for plaintiff in error.

The jury having found that upon the occasion of the writing of the contract, the defendant did not represent to the plaintiff that it was a joint will, that in case of her death he would have possession and management of their joint property until his death when it would go to their children, and that in case of his death she should receive $500 per month for the remainder of her life, and that plaintiff did not rely solely upon representations of the defendant, it was error for the Court of Civil Appeals to render judgment for plaintiff, cancel contract and award recovery to plaintiff of one-half of the property. Commercial Casualty Co. v. Hilton, 55 S. W. (2d) 120, 126; Wilson v. Jones, 45 S. W. (2d) 573; J. B. Colt Co. v. Wheeler, 12 S. W. (2d) 1102.

Property acquired in the State of Texas out of earnings of the husband, which, under the law of Oklahoma, was the separate property of the husband, would continue to be separate property within this State. Oliver v. Robertson, 41 Texas 422; Grange v. Kayser, 80 S. W. (2d) 1007; Cox v. McClave, 22 S. W. (2d) 961.

*Andrew B. Riddle,* of Ardmore, Oklahoma, *Cantey, Hanger & McMahon,* of Fort Worth, and *Earl E. Hurt,* of Dallas, for defendant in error. In reply to plaintiff in error's proposition cite Swearingen v. Swearingen, 193 S. W. 442; Kuehn v. Kuehn, 232 S. W. 918; Montgomery v. Montgomery, 41 Okla. 581, 139 Pac. 288; Mann v. Mann, 135 Okla. 211, 275 Pac. 348.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in one of the district courts of Dallas County by defendant in error, Mrs. L. A. Joiner, against plaintiff in error, C. M. Joiner, sometime about the 1st of January, 1934. The parties will be referred to as in the trial court.

Plaintiff's suit was to recover a one-half interest in a considerable estate, situated mostly in the State of Texas, consisting of both real and personal property. The title to these properties was in the name of defendant or in the names of other persons as trustees for him. Plaintiff appears to have proceeded upon the theory that at the time these properties were acquired she and defendant were residents of the State of Texas, were husband and wife, and therefore under the laws of this State such properties were owned jointly between them as community assets. In the alternative, she contended that if the residence of defendant during the time said properties were accumulated was the State of Oklahoma, then said estate constituted "jointly acquired" properties within the meaning of the laws of Oklahoma, and she was entitled to an equitable division of same. She pleaded the purport of such laws in this language:

"Under the laws of the State of Oklahoma when a marriage is dissolved the court pronouncing the decree of divorce has the legal right to and the duty to divide the property accumulated during such marriage by either spouse in such manner as the facts and circumstances justify and as to the court may seem just and equitable; that under the laws of the State of Oklahoma when a marriage is dissolved by divorce the property acquired during such marriage and not disposed of is owned jointly by the husband and wife, though divorced, until a final adjudication of the property rights on such basis and in such proportions as to the court may seem just and equitable concerning the circumstances of the case and the conduct of the parties."

1 In the trial court the jury found that the residence of the parties was in the State of Oklahoma, and that finding is not questioned. This takes out of the case all questions of title in plaintiff by reason of the laws of this State.

The trial of the case appears to have centered around the effort of plaintiff to set aside and cancel a settlement agreement executed by the parties on August 31, 1933, a few days before defendant obtained a decree of divorce dissolving the marriage status. No question has been raised concerning the validity of such decree. Upon findings of the jury, which the trial court construed as exonerating defendant from the fraud alleged in plaintiff's petition, and findings favorable to defendant upon the question of residence, the trial court entered judgment in favor of the defendant. This judgment was reversed by the Court of Civil Appeals and judgment was rendered in favor of plaintiff cancelling the settlement agreement and awarding her a one-half interest in all the effects, real and personal, possessed by defendant as of date September 7, 1933. 87 S. W. (2d) 903. The Court of Civil Appeals construed the findings of the jury as justifying cancellation of the settlement agreement, but instead of reversing and remanding the cause, rendered judgment in favor of plaintiff for a one-half interest in the properties, on the theory that under the laws of Oklahoma she was vested with title thereto to that extent. This question, as we view the case, is controlling, and is rightfully entitled to first consideration.

2 Under the laws of Oklahoma, as regards the property of married persons, ownership thereof falls into two classes: Separate property of the respective spouses, and property "jointly acquired." There is no such thing as community property as known to our laws. Distinctions between husband and wife in the matter of acquiring and disposing of property are abolished. By Section 1665 of Harlow's Oklahoma Statutes of 1931, Sec. 6619 C. O. S. 1921, it is provided that "woman shall retain the same legal existence and legal *personality* after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man." By Section 1658 of said laws it is provided that a husband and wife may hold real or personal property together as joint tenants, or tenants in common, and the wife may, without the consent of her husband, convey her separate property. By Section 1655, Sec. 6609 C. O. S. 1921, it is provided that "either husband or wife may enter into any engagement or transaction with the other, or with any other person, re-

specting property, which either might, if unmarried." The statutes of that State do not specifically define separate property, but the decisions, in light of the definitions of "jointly asquired" property, have by necessary implication defined separate property as property acquired by either spouse as result of his or her separate earnings, skill, industry or labor. By Section 673, Sec. 509 C. O. S. 1921, it is provided as follows: "A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of either party in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party." Of course the fraud here meant is in the matter of procuring the divorce.

Section 672 of Harlow's Laws of 1931, identified by the evidence as Sec. 508 of C. O. S. 1921, is as follows:

"When a divorce shall be granted by any reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. In case of a finding by the court, that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper."

3 It was under the latter part of this section that the Court of Civil Appeals sought to justify its action in rendering judgment in favor of plaintiff for an undivided one-half of the effects, real and personal, possessed by defendant on September

7, 1933. In doing so the court necessarily made a finding that all such effects were "acquired by the parties jointly during the marriage," and further necessarily found that the division of such effects in the manner indicated was "just and reasonable," or "equitable," as the Oklahoma decisions declare the division must be. The court did this notwithstanding the Oklahoma Supreme Court recognizes the general rule, that, in the absence of a showing that the court granting a divorce was without power to litigate the property rights of husband and wife, "where a divorce action has been finally closed, any property rights between the parties growing out of the marital relation are no longer open to adjudication." Thomas v. Thomas, 27 Okla. 784, 109 Pac. 825. It is evident, however, that if the properties owned by defendant were not "jointly acquired" during the marriage, within the purview of the Oklahoma laws, plaintiff has no interest therein, and the question of an equitable division becomes unimportant.

In several cases the Supreme Court of Oklahoma has defined "jointly acquired" property, within the meaning of Section 672, as property "accumulated by the *joint industry* of the husband and wife during the marriage." See Tobin v. Tobin, 89 Okla. 12, 213 Pac. 884, and Bruce v. Bruce, 141 Okla. 160, 285 Pac. 30. In the case of Thompson v. Thompson, 70 Okla. 207, 173 Pac. 1037, the court said: "The statute regards the property of married persons as falling into two classes—the separate property of each of the spouses, and the property which has accumulated by the *business side of the marriage.*" In that particular case the court, in speaking of the marital venture, said: "As fruitless as it has been in everything but money accumulations, it has been reasonably successful in the acquiring of property; and the evidence tends to show that the business success of the venture is to be attributed to the *judgment, industry, and capacity of both* parties."

In the case of Chamberlain v. Chamberlain, 121 Okla. 145, 247 Pac. 684, property was held to be jointly acquired, the holding being based upon a finding as follows:

"The present estate could not and would not have been acquired except for the *joint efforts* of both the plaintiff and the defendant; that each performed a part in its acquirement during their marriage relation; that the defendant received all the *joint earnings* of plaintiff and defendant with the exception of the property in Oklahoma City; and that by her *management* and *industry* an estate has been jointly acquired and conserved by their *joint efforts.*" (Emphasis ours.)

In the case of Howell v. Howell, 42 Okla. 286, 141 Pac. 412, in speaking of property which was held to be the separate property of the husband, rather than property jointly acquired, the court said:

"We do not mean to suggest that after the marriage, but that the plaintiff aided and assisted the defendant in preserving, building up, and adding to his property, and to this extent it might be said that it was the result of their joint efforts; but it presents a very different case from one where two people marry with nothing, and through years of *cooperation* and *community of endeavor* they create an estate through their *joint efforts.*" (Emphasis ours.)

From these decisions we are driven to the conclusion that to constitute property as "jointly acquired" within the provisions of the statute in question, such property must have been acquired as the result of the joint industry, efforts, management, judgment, capacities and earnings of both spouses; or at least as a result of some of them.

4 The record in this case shows without dispute that about the year 1908 plaintiff and defendant were residing together at Ardmore, Oklahoma, where they had resided for a number of years. For business reasons defendant decided to move to Oklahoma City and make his home there. Mrs. Joiner refused to go to Oklahoma City, her reasons in part being that her friends and children lived at Ardmore, and she did not wish to leave them. Defendant, however, took up his residence at Oklahoma City and engaged in business to some extent, without any substantial success. Shortly after going to Oklahoma City he filed a suit for divorce on the ground that the refusal of plaintiff to make her home with him constituted desertion. In this connection we call attention to the fact that Section 1652 of Harlow's Laws provides as follows: "The husband is the head of the family. He may choose any reasonable place or mode of living and the wife must conform thereto." At the instance of his children defendant dismissed the divorce suit, but never returned to Ardmore and plaintiff never resided with him at Oklahoma City. About the year 1922 defendant acquired certain oil leases on lands in East Texas by means arising solely from his own efforts and ability. These leases remained undeveloped, largely because of lack of means, until 1927. Defendant then began exploitation of the lands for oil, and after many struggles, almost ending in despair and utter insolvency, in October, 1930, the discovery well in the great East Texas oil fields was brought in on some of these lands. The record clearly

justifies the statement that but for the persistent, tireless, and almost heroic fortitude and efforts of defendant in the matter of making the discovery of oil, these leases would never have been of any substantial value to him. It further appeared beyond dispute that at the time defendant took up his residence in Oklahoma City all of the children of plaintiff and of himself were adults and married, except one. She was then practically grown and for many years thereafter partly assumed the household cares and responsibilities. During the years defendant contributed to some extent to the support of the wife and said daughter. Each of the parties apparently regarded the marital status, so far as the practical side of life was concerned, as ended, although feelings between them remained mutually pleasant and friendly. The outstanding fact remains undisputed, however, that as to the properties now the subject of litigation plaintiff did not by her labor, industry, skill, ability or earnings contribute anything to their acquisition, or to their development; nor did she, according to the evidence, contribute anything to the domestic life of defendant while acquiring the original purchase money.

Under the decisions of the Supreme Court of Oklahoma, above mentioned, we have no hesitancy in expressing the conclusion that none of the properties in which plaintiff in this suit claims an interest were "jointly acquired," within the purview of the Oklahoma laws. This being true, the controversy with reference to the settlement agreement becomes of no consequence, as plaintiff had no interest whatever in said properties.

The judgment of the Court of Civil Appeals is in all things reversed, and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court February 2, 1938.