## ROBERTS v. HOWE.

### No. 12787.

Court of Civil Appeals of Texas. Dallas.

Jan. 28, 1939.

Rehearing Denied March 4, 1939.

Alvin H. Lane, of Dallas, for appellant.

Pat J. Howe, of Dallas, for appellee.

YOUNG, Justice.

A review is here sought of a fee allowance by a Dallas County District Court to appellee as receiver, growing out of proceedings wherein the one-sixteenth undivided interest of appellant in the Lide-Tayloe 40-acre oil and gas lease, Rusk County, was involved. The original suit was filed by Lide-Tayloe Oil Company, Inc., owner of an undivided one-half interest in said lease, under allegations generally that it was operating the leasehold · (on which were oil wells flowing and in process of completion) and that C. M. Joiner, trustee, his divorced wife, and Dave M. Lide were asserting a claim to the one-sixteenth interest, but that none of said claimants were paying their pro rata share of the operating or development cost; asking for the appointment of a receiver so that the oil accruing to such interest could be sold, the proceeds collected, and all operating costs due by this. fractional interest be currently paid, pending legal adjudication or title. C. M. Joiner had owned an undivided one-eighth working interest in the lease and had sold and contracted to deliver the same to Dave M. Lide (who was acting for and on behalf of appellant) when litigation between Mr. Joiner and his former wife intervened to prevent consummation of said sale; Mrs. Joiner asserting ownership in one-half of the interest or this one-sixteenth part—the subject matter of this suit. Appellee was accordingly appointed receiver of the property just mentioned on September 7, 1935, and duly qualified with the following powers and duties set forth in his order of appointment: "Said receiver is hereby authorized to sell all the oil run to the credit of said interest now in the hands of or sold to Atlas Pipe Line Company, of Shreveport, Louisiana, to execute division orders therefor, and to take such steps as may be necessary to establish his title and his right to collect the proceeds of said oil. He is further authorized to collect the proceeds of said oil and to deposit the same in the First National Bank in Dallas, of Dallas, Texas, the same to be checked out upon his signature, countersigned by the Judge of this Honorable Court. He is further authorized to pay such claims as may be presented to and approved by him and by this Honorable Court, and he is ·further.

authorized to pay all current operating expenses properly chargeable against said interest. He is instructed to keep proper records and accounts of all funds received by him, and disbursed by him, and to hold all funds received by him in excess of necessary expenditures on deposit in said bank awaiting final determination of the title to said interest in said lease."

An operating company (Lide-Tayloe, Inc.) being in charge of the entire leasehold during the receivership period, supervising the production, additional development, etc., it is obvious that appellee's principal service related to the sale of oil and collection of proceeds thereof running to the credit of the interest involved; paying current expenses of operation properly chargeable to the same, giving prompt attention to tax items; making annual reports to the court of receipts and disbursements, accounting properly therefor; executing all necessary instruments and contracts as to further drilling and paying pro rata cost; and rendering true, complete and detailed account of the matters so handled under his initial authority. The necessity for the court proceedings terminated with the final decision of the Supreme Court in Joiner v. Joiner, 112 S.W. 2d 1049, under mandate filed in the district clerk's office, March, 1938, decreeing good title in Mr. Joiner as to the property in suit. Appellant thereby legally succeeded to such interest and intervened in May, 1938. Mr. Roberts had paid $13,300 to Joiner for this undivided interest with six wells on the 40-acre lease, and during appellee's tenure five additional wells were drilled and paid for. Appellee's gross receipts as receiver were $15,118.65, total disbursements $4,754.28, cash in hand at close of administration $10,364.37; of which $3,300 was ordered by the court to be paid to C. M. Joiner free and clear of receiver's expense. The balance on hand ($7,064.37) included $1,268.60, oil run to the credit of the one-sixteenth interest prior to appellee's appointment, he being paid in the beginning the sum of $250 as an advancement on his fee finally to be allowed. The receivership, with final report approved, was ordered closed August 8, 1938, having continued approximately three years. Upon a hearing appellee was allowed a total fee of $3,600 to which appellant excepted and appealed, contending such amount was excessive and unreasonable, and that a proper allowance should

not be in excess of $500. Appellee received and deposited in bank during his term of office some forty-two checks from pipe line companies, and has drawn fifty-six checks against such account, each disbursement preceded by an application covering the particular item, and court order thereon, approved by all interested attorneys. No contest occurred as to any of the affairs in appellee's charge, except the fee allowance now under consideration. Appellant points out that the majority of the orders as entered covering expenditures were unnecessary, should have been consolidated, especially as to the monthly pro rata operating charge, because of his general authority as to same, together with the fact that in every case the court countersigned the issue of individual checks; further, that appellee created undue labor for himself as to said numerous applications and orders, resulting in excessive court costs, his entire service being patently clerical, with no more than bookkeeping responsibility. Complaint is largely made, not of the ability and dispatch with which appellee handled his receivership affairs, but rather of a too meticulous handling, all transactions being with reference to ministerial matters; and that the fee as set by the court was in excess of the fair value of necessary services required and performed.

 On the other hand appellee points out that in receivership matters, specific court orders are necessary before disbursement by a receiver of trust funds, citing 36 Tex.Jur. Receivers, Secs. 125, 128, pp. 247, 250; 53 C.J. Sec. 197, p. 157; 23 R.C.L. Sec. 82, p. 76; Alderson on Receivers, Sec. 221, p. 268. These authorities also hold, however, that even without express court direction, a receiver may incur any expense absolutely essential to the preservation and use of the property. Here the language of the court's order of appointment fully warranted appellee in paying the operating expenses chargeable to the one-sixteenth interest involved (running from $25 to $35 per month) without further specific orders of approval save in his annual and final reports. The requirement that Judge McCallum should countersign all checks practically relieved the receiver of major responsibility in accounting for his trust, though the scrupulous methods employed by Mr. Howe are generally to be commended. However, a regular notice to all interested parties of these current items of

expense before they were approved by the receiver and paid under the court's counter signature, would have sufficiently disposed of these matters in the interest of time and official exertion. And we do not think the fact that shortly after appellee qualified, the oil interest in question was adjudicated the property of Mrs. Joiner (Joiner v. Joiner, Tex.Civ.App., 87 S.W.2d 903, Rev. by Supreme Court, 112 S.W.2d 1049) made more weighty his duty to administer the trust in a prudent, efficient and business-like manner. Appellee's allowance as made by the court is supported by opinion evidence from attorneys of extensive practice and high standing, and the receiver being an experienced lawyer, obviated the necessity of other legal expense; the status of the property and method of handling under his initial authority rendering needless the usual Master in receivership cases. On the other hand, the character and extent of appellee's services are before us without dispute. While we do not seek to minimize the professional duties fully and satisfactorily performed by appellee, yet the sum allowed is not entirely justified by the record under the test uniformly applied by the authorities; 53 C.J. Receivers, Secs. 628, 629, pp. 386, 387; Brand Banking Com'r v. Denson et al., Tex.Civ.App., 81 S.W.2d 111, writ dismissed. These controlling considerations are: the nature, extent and value of the property handled, complications or difficulties encountered, time spent, the knowledge, experience, labor and skill required of, or devoted by the receiver, responsibilities assumed, etc; 53 C.J., supra. We are mindful of the rule that allowances of this sort are usually within the sound discretion of the trial court and are presumptively correct, it ordinarily having a better means of knowing what is just and reasonable than the Appellate Court can have; Bryan et al. v. Early et al., Tex.Civ.App. 266 S.W. 792; but these matters are discretionary only in the sense that there are no fixed rules to determine a proper allowance. Here the facts being undisputed, we simply differ with the able trial judge as to what should be a reasonable compensation. We conclude that a total fee to appellee in excess of $1,800 is not supported by the record. It is therefore ordered that the trial court's ruling, fixing $3,350 as the balance due appellee as receiver should be reversed, and the allowance to appellee aforesaid is here fixed at $1,800, which, after credit of $250 already paid, leaves $1,550 as the amount presently due. Judgment of the trial court is reformed accordingly, and as reformed, is affirmed.