Ted R. McCLAIN, Individually, etc., et al.,
Appellants,

v.

Patsy V. Johnson McClain HOLDER, Individually, etc., et al., Appellees.

No. 12823.

Court of Civil Appeals of Texas.

Galveston.

April 28, 1955.

Rehearing Denied May 19, 1955.

Kennedy & Granberry and Frank P. Granberry, Crockett; M. W. Pugh, Marlow, Okl., and Paul Pugh, Oklahoma City, Okl., for appellants.

Adams & McReynolds, Crockett, Ralph P. Mathis, Wichita Falls, for appellees.

CODY, Justice.

This is a suit to partition the property described in plaintiffs' petition.

The plaintiffs were Dr. McClain's four children born of his first marriage. The defendant Patsy V. Johnson McClain Holder is the sole devisee under the will of Mrs. McClain, who was the second wife and survivor of Dr. McClain.

Dr. McClain was a native of Houston County, Texas. After he completed his medical education, he moved to Oklahoma to practice his profession. The property here involved was accumulated by the joint industry in Oklahoma of Dr. McClain and his second wife, who was a registered nurse. No children were born to them but he and his wife took defendant into their home at an early age and reared her. She is a daughter of one of the plaintiffs and

so a grandchild of the doctor. He retired in January, 1952, and bought a residence in Crockett, Texas, and on January 15, 1952, he and his wife moved from Oklahoma with all of the property which they had there acquired and is here involved. He died intestate January 16, 1952, which was the day after he moved to Crockett.

The property sought to be partitioned consists (1) of the residential property in Crockett, (2) the household furnishings which had been placed therein, and a Buick automobile, and (3) bonds or trust certificates of the face value of $43,000.

Following the doctor's death, his wife remained in possession of aforesaid property until her death on January 5, 1953, with the exception that she cashed one of the certificates covering bonds of the face value of $3,000 and had the remaining bonds re-registered in her name and that of defendant in exactly the same manner that they had theretofore been registered in the doctor's and her name. After the death of Mrs. Lee McClain, defendant had her will, which left her everything, probated, and with the exception of the residence moved all of the property to her home in Wichita Falls. Thereafter the interest accruing on the bonds or trust certificates was collected by her. The court tried the case without a jury partly upon the facts as stipulated by the parties and partly upon the testimony of witnesses and on documentary evidence. The residence property was ordered partitioned according to the agreement of the parties and no appeal is prosecuted from that part of the judgment. The court partitioned to defendant an undivided two-thirds interest in the household furnishings and the automobile, and the remaining one-third to plaintiffs. The court held that upon Dr. McClain's death the trust certificates became no part of his estate but the exclusive property of his widow. This last holding and other parts of the judgment which may be material will hereafter be taken up.

In their first and second points plaintiffs complain, in substance, of the court's

awarding two-thirds of the household goods and automobile to defendant and one-third to them instead of the other way round.—We overrule the points.

It is not disputed that the personal property dealt with in the foregoing points passes in accordance with the laws of descent and distribution of Texas. It is further not disputed that the character of ownership which was impressed upon the property when acquired in Oklahoma remained unaffected when removed to Texas. See Oliver v. Robertson, 41 Tex. 422, 425. It is the contention of the defendant that under the laws of Oklahoma property acquired by the joint industry of the spouses (and it was stipulated by the parties and found by the court that all of the property moved to Texas from Oklahoma was acquired by the joint industry of the spouses) belonged to them equally. On the other hand, the position of plaintiffs is that such property is the separate property of the husband.

Plaintiffs based their contention that the property was the separate property of the husband upon the claim that under the laws of Oklahoma, the common law, so far as it relates to property acquired during marriage, fixes the marital rights of the spouses to such property. If that were so, such property would of course have been the separate property of the husband. Oliver v. Robertson, supra. But plaintiffs have cited no authority in support of such contention. They apparently arrive at the conclusion that the common law governs marital rights in property acquired during coverture from the mere fact that Oklahoma is not a community property state. So far as our investigation goes, the only foundation for urging that the common law governed marital rights in property in Oklahoma is Sec. 2 of Title 12 of the Oklahoma statutes, which reads in part, "The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable * * *." The cited statute no more makes the common law govern marital rights in property acquired during coverture than does our own R.C.S. Art. 1. Indeed, upon the face of it the first part of the Oklahoma statute appears to be the legal equivalent of our Art. 1, which reads in part, "The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature." A cursory examination of the General Statutes of Oklahoma discloses that statutory law governs marital rights in property acquired during marriage as completely as it does in Texas. Indeed, Oklahoma has gone much further toward emancipating married women from the disabilities imposed by common law than is the case in Texas, and in support of this statement we have set out in Appendix A attached to this opinion either excerpts from or the substance of Title 32, Sec. 15; and Title 32, Sec. 5, both of the laws of Oklahoma. It appears therefrom that the rights of married women to contract and acquire property stand upon the same footing as those of married men. Their earnings are not subject to the debts of the husband. But, be that as it may, we must take the law of Oklahoma with respect to property rights to be what it has been declared to be by the Supreme Court of Oklahoma. And the Supreme Court of Oklahoma has declared that property of spouses is either their separate property or property "jointly acquired." Joiner v. Joiner, 131 Tex. 27, 112 S.W.2d 1049, 1050, 1051.

Plaintiffs contend that the Supreme Court of Oklahoma has made such classification of property applicable only in the division of property in divorce cases and then only because of the provisions of Title 12, Sec. 1278 of the laws of Oklahoma. This statute is quoted in full in Joiner v. Joiner, supra. Said statute, after providing how the court in a divorce suit may deal with the separate property of the spouses, goes on to provide: "* * * As

to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, * * *, the court shall make such division between the parties respectively as may appear just and reasonable * * *."

■ It stands to reason that, in enacting said statute, the Oklahoma Legislature merely recognized a classification of ownership of property which exists under the laws of Oklahoma, and did not in said statute create such a classification. It appears from the case of Joiner v. Joiner, supra, that where the industry of the husband alone acquired property during marriage—the spouses living apart—such property was the separate property of the husband. It is ordinarily only in divorce cases that it becomes important to distinguish between property "jointly acquired" and property acquired by the separate industry of one of the spouses.

■■ The position of the laws of Oklahoma with reference to joint tenancy is identical with that of Texas; so we must construe property which is classified in Oklahoma as property "jointly acquired" or property which is "jointly owned", as being property which is owned equally, or being property which the parties own as tenants in common.

■ The household furnishings and the Buick being equally owned by the spouses, upon the death of Dr. McClain intestate, one-third of his one-half, or one-sixth, passed, subject to administration, to his wife leaving her vested with four-sixths or two-thirds thereof, and so likewise two-thirds of one-half, or one-third passed to plaintiffs. Subdivision 1 of R.C.S. Art. 2571.

Plaintiffs complain in their third point of the court's judgment in effect holding that the trust certificates by their terms became the property of Mrs. Lee McClain at the death of Dr. McClain and became no part of his estate.

Upon the death of Dr. McClain, the following listed bonds, together with a $3,000.00 bond cashed by Mrs. McClain after the death of her husband, were in the joint possession of him and Mrs. McClain:

Selected Investments Trust Bonds as follows:

| Series | Number | Originally registered in the name of | Amount |
|--------|--------|--------------------------------------|--------|
| "A" | 7811 | W. Z. McClain or Lee McClain | $20,000.00 |
| "O" | 979 | W. Z. McClain or Lee McClain | 10,000.00 |
| "O" | 988 | W. Z. McClain or Lee McClain | 1,000.00 |
| "O" | 1452 | W. Z. McClain or Lee McClain | 3,000.00 |
| "O" | 1959 | W. Z. McClain or Lee McClain | 1,000.00 |
| "O" | 2987 | W. Z. McClain or Lee McClain | 1,000.00 |
| "O" | 3885 | W. Z. McClain or Lee McClain | 1,000.00 |
| "O" | 6618 | W. Z. McClain or Lee McClain | 3,000.00 |

The certificates and purchase contracts pursuant to which they were bought are too lengthy to be inserted in this opinion, even in an appendix. We have found no significant difference in the wording of the certificates of the two series issued to Dr. McClain or Mrs. McClain and the parties claim none. The same is true with respect to the purchase agreements whether they relate to the purchase of certificate bonds of Series A or Series O. Each purchase agreement recites that "I, William Z. McClain" etc. "Agree to purchase" and the agreement by reference makes a trust indenture a part thereof and also provides "It is further understood and agreed that no verbal representations of any kind are binding upon the Company or the trustee unless and except they be the terms, conditions and provisions of the indenture which is the sole contract between the parties concerned." The purchase agreement concludes with a direction to the company to register the certificates in the names of

"Dr. William Z. McClain or Mrs. Lee F. McClain (wife)."

The certificates each certify that "Dr. William Z. McClain or Lee F. McClain, the registered holder hereof has paid (the face value of the certificate bond)" and further that the Registered Holder had "by acceptance of the certificates become a party to the indenture and is bound by all the terms and provisions thereof." They further provide that the Registered Holder may, subject to the provisions of the indenture, upon written demand, cash same by presenting it to the company. And there is a provision giving the company a corresponding right to call in for payment such certificate bonds. Each certificate recites "This Certificate-Bond is not transferable and the Registered Holder hereof shall for all purposes be deemed the absolute owner hereof * * *." The right is given the certificate holder to assign in writing the right to cause the certificate-bond to be redeemed, and to receive from the Selected Investments Corporation Trust Fund distributive share. And when such certificate-bond is endorsed, and is delivered to the assignee, the assignee may cause the same to be redeemed, the same as the registered holder could.—The trust indenture referred to in the purchase agreements and the certificate-bonds was not introduced in evidence nor covered by the stipulation. The purchase agreement does not constitute evidence that Dr. McClain was agreeing to purchase or in fact purchased the certificate with his separate property. The stipulations of the parties are that the property involved was acquired by the joint industry of the spouses. Each certificate recites that the "Registered Holder" had paid the face value thereof.

We disagree with the contention of defendant that Mrs. McClain was a third party beneficiary, such as the Supreme Court had under consideration in Edds v. Mitchell, 143 Tex. 307, 319, 320, 184 S.W. 2d 823, 158 A.L.R. 470. By the terms of the certificate-bonds Mrs. Lee McClain was as much a directly participating party in the certificates as was Dr. McClain. And we disagree with plaintiffs that Reese v.

First National Bank of Bellville, Tex.Civ. App., 196 S.W.2d 48, 171 A.L.R. 516, (error refused, n. r. e.), is in point except as hereafter noted. The bank certificate dealt with in the latter case was a negotiable instrument, and remained the property of the purchaser from the bank unless or until he delivered the same as a gift to the "or" payee named therein, or in some other way transferred the ownership thereof.

■ The certificate-bonds which we are considering are registered bonds, and for all practical purposes can be transferred only by regular assignment on the books of Selected Investments Corporation, which issued them. 11 C.J.S., Bonds, § 66, p. 438. Since the bonds could be transferred only by endorsement, and by delivery to the transferee, they could not have been transferred except by the joint consent of Dr. and Mrs. McClain, because they were in their joint possession. And for the same reason they could have been presented for payment to Selected Investments Corporation, only by the mutual consent of Dr. and Mrs. McClain.

■ Here the certificate-bonds were registered in the name of "Dr. W. Z. McClain or Lee McClain", and they are declared the "Registered Holder" thereof, and the absolute owner thereof, and given the right to cash same, etc. We are unable to find that any ambiguity results from such provisions. See the holding in Reese v. First National Bank, supra, to the effect that a bank deposit certificate payable to A "or" B is not ambiguous. The only thing that is not provided for by the terms of the certificate-bonds, and bearing in mind the joint possession of them, is what will happen to the interest of "Dr. W. Z. McClain or Lee McClain" in the event of the death of either Dr. McClain or Mrs. McClain. It is the office of the laws of descent and distribution to transfer the property rights of an intestate. By virtue of the terms of the certificates, and of the joint possession thereof, and the fact that they were acquired by the joint industry of the parties, we must hold that the doctor and his wife owned the bonds as tenants in common.

The Supreme Court of Oklahoma holds that where there are two or more grantees in an instrument, they must be deemed tenants in common unless it is clearly shown on the face of the grant that a joint tenancy is intended. Clinton v. Clinton, Okl., 101 P.2d 609. We have no doubt that the doctor and his second wife believed that the payment provided for was to be made as an entirety, and that in case of the death of one of them, the survivor would succeed to the ownership of the bonds. The representative of the company, who sold the bonds to the doctor and his second wife, over the objection of plaintiffs, was permitted to testify that he explained to Dr. McClain that the bonds could be registered the same as Government bonds, using only "or" as to the holders; and that Dr. McClain asked for the "or" bonds, and that the doctor said he wanted the bonds written so that the survivor could cash them. But there is no provision in the bonds providing such right. We recognize the rule that parol testimony as to the circumstances of the surrounding parties, out of which contracts grow is admissible for the purpose of ascertaining the real intention of the parties. Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579. We have concluded that the omission of the bonds to specify such an unusual provision as that they shall pass to the survivor is not one that can be supplied by parol where there is nothing contained in the bonds to suggest survivorship except that, in the event of the death of one "or" payee, there could remain only the other "or" payee to whom payment could be made in person. Upon the death of either "or" payee, the law supplies his heirs to take his place. Here upon the death of the doctor one-third of his half passed to his wife, subject to administration. So that the parties inherited the bonds just as they did the other personal property. Plaintiffs' aforesaid third point is sustained.

What has been said requires that we sustain plaintiffs' fourth point complaining of the court's finding of fact that, at the time of the purchase of the bonds it was agreed by the parties to the bonds that they should be owned by the survivor Registered Owner.

What has been said also requires that plaintiffs' fifth point be sustained, complaining of the admission of oral evidence that Dr. McClain intended that the surviving registered holder of the bonds should own them.

Plaintiffs did not have any allegation complaining that defendant had converted the personal property, other than the bonds, to her use, etc. We do not hold that plaintiffs could have convicted her of conversion even if there had been such allegation.—We overrule plaintiffs' sixth point.

The judgment is sustained insofar as the partition of the real estate is concerned, and insofar as the household furniture and automobile are concerned. The bonds are ordered divided so that plaintiffs receive one-third thereof (each receiving a $\frac{1}{4}$ of $\frac{1}{3}$), and defendant receiving two-thirds thereof.

Affirmed in part and in part reversed and remanded with instructions to enter judgment in accordance with this opinion.

### Appendix A

Title 32, Sec. 15 of the Oklahoma Statutes provides that "Woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injury * * she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has * * *."

Title 32, Sec. 5 provides that "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other as defined by the title on trusts."