Mohamed A.F. ISMAIL, Appellant,

v.

Zakya ISMAIL, Appellee.

No. 01–84–00737–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 7, 1985.

Rehearing Denied Dec. 12, 1985.

Donn C. Fullenweider, Clinard J. Hanby, Haynes & Fullenweider, Houston, for appellant.

Tom Alexander, Butler, Richard L. Flowers, Jr., Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

Before SAM BASS, WARREN and DUNN, JJ.

### OPINION

WARREN, Justice.

This is a divorce case between two Egyptian citizens. The trial court granted the parties a divorce and divided certain property, including real property located in Egypt.

In six points of error, appellant contends that the trial court erred or abused its discretion: (1) in applying the Texas "quasi-community property statute" to this case, (2) in failing to decide this case under Egyptian law, (3) in failing to dismiss for forum non conveniens, (4) in dividing the alleged "quasi-community estate," (5) in awarding excessive attorney's fees to the appellee, and (6) in entering sanctions against the appellant.

Appellant and appellee, both Egyptian citizens, were married in July 1966. Shortly thereafter, they moved to Houston and lived there until 1972. During their stay in Houston, they both obtained permanent resident status (green cards), two children

were born to them, and both received PhD degrees.

In 1972, the family returned to Egypt, but moved to England the following year. By the end of 1977, both were back in Egypt, and appellee was teaching at Al-Azhar University in Cairo. During that period, appellant bought Houston real estate, which is a subject of this appeal. The family lived together in Cairo until 1981, when appellee came back to Houston on a research fellowship. The fellowship was conditioned on appellee returning to Cairo and completing her research. Appellant accompanied appellee to Houston but only stayed long enough to rent an apartment, buy a car, and generally see that appellee was properly situated.

In December 1981, appellant began proceedings in Egypt to obtain permanent custody of the two children, who were living in Egypt. In January 1982, appellee filed for divorce in a Houston district court, seeking a division of the marital estate and custody of the two children. In May 1982, appellee returned to Egypt and resumed her position at Al-Azhar University. While there, she contested the custody suit and returned to Houston in July 1982, where she remained until the divorce trial.

In February 1982, appellant filed a general denial to appellee's divorce suit. From then until the decree was entered on August 9, 1984, both sides made extensive discovery, here and in Egypt. The trial court granted appellee a divorce, divided the property by giving appellee title to all Texas real property, her personal automobile, funds deposited in Texas bank accounts, and the personal property in her possession. Appellant was awarded all Egyptian real and personal property, all interest in certain business ventures, and all interest in pending lawsuits. Finally, the court awarded appellee $15,000 "as sanctions against appellant for his acts and omissions" as alleged by the wife, and $82,881.72 in attorney's fees. The court declined to decide child custody.

On August 21, 1984, the appellant requested that the court file findings of fact

and conclusions of law. The same day, he filed his motion for extension of time in which to file findings of fact and conclusions of law. On September 10, 1984, he filed a motion for new trial. Neither the request for findings of fact and conclusions of law, nor the motion for new trial, was ever acted upon by the trial court.

## I. QUASI–COMMUNITY PROPERTY

In his first point of error, the appellant contends that the trial court erred in characterizing the Texas real estate as "quasi-community property" under section 3.63(b) of the Texas Family Code. In his fourth point of error, he contends that even if section 3.63(b) was properly applied in this case, the trial court abused its discretion in awarding all of the Texas realty to the appellee. That section, adopted in 1981, states:

(b) In a decree of divorce or annulment the court shall also order a division of the following real and personal property, wherever situated, in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage:

(1) property that was acquired by either spouse while domiciled elsewhere and that would have been community property if the spouse who acquired the property had been domiciled in this state at the time of the acquisition; or

(2) property that was acquired by either spouse in exchange for real or personal property, and that would have been community property if the spouse who acquired the property so exchanged had been domiciled in this state at the time of its acquisition.

Tex.Fam.Code Ann. sec. 3.63(b) (Vernon Supp.1985). The appellant's arguments are essentially twofold: First, as a matter of statutory construction, section 3.63(b) does not apply to this case, since the appellee unilaterally moved to Texas; second, application of the statute in this case renders the statute unconstitutional.

The quasi-community property statute does not expressly limit its reach to situations where *both* spouses have migrated from a common law jurisdiction to Texas. Nonetheless, the appellant contends that the purpose of the statute is to remedy the inequities of prior decisions awarding all "common law separate property" acquired during the marriage to the acquiring spouse. He argues that where only one spouse migrates to Texas, the quasi-community property statute does not apply because the migrating spouse may enforce his or her rights to marital property by filing for divorce in the previous domicile. He further contends that because the appellee did not migrate from a common law jurisdiction (Egypt is neither a "community property" nor a "common law" jurisdiction), the statute does not apply.

■ We conclude that section 3.63(b) applies in the division of migratory spouses' property regardless of the nature of the previous domicile's legal system. This conclusion is supported by the plain meaning of the statute; it applies to property "wherever situated," acquired by either spouse while domiciled "elsewhere." Admittedly, the usual application of the statute will likely be in situations where the spouses were previously domiciled in a common law state. The legislative history of the provision indicates that this scenario was the primary focus of the legislation. *See* House Comm. on the Judiciary, Bill Analysis, Tex.H.B. 753, 67th Leg. (1981). No logic is given, however, to support the appellant's request that we limit the application of the statute to migrations from common law jurisdictions. The same potential problems exist in other migrations. The problems may even be exacerbated when the spouses migrate from a foreign country that has neither a common law nor a community property system. Moreover, applying the quasi-community property statute to migrations to Texas from all jurisdictions is the better rule in terms of uniformity and ease of application.

The appellant also argues that the statute should not be applied where only one spouse migrates to Texas. He contends that application of the statute in this con-

text is unconstitutional. In support, he first cites California precedent for the proposition that the quasi-community property statute[1] only applies where *both* spouses have migrated to the community property state. *See In re Marriage of Roesch*, 83 Cal.App.3d 96, 147 Cal.Rptr. 586 (Cal.Ct. App.1978), *cert. denied*, 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979). *See also* Oldham, *Property Division in a Texas Divorce of a Migrant Spouse: Heads He Wins, Tails She loses?* 19 Hous.L.Rev. 1, 25 n. 134 (1981).

In *Roesch*, the California Court of Appeals held that its quasi-community property statute could be constitutionally applied only when two conditions were met: "(1) both parties have changed their domicile to California; and (2) subsequent to the change of domicile, the spouses sought in a California court legal alteration of their marital status." 83 Cal.App.3d at 107, 147 Cal.Rptr. at 593; *see also Addison v. Addison*, 62 Cal.2d 558, 399 P.2d 897, 43 Cal. Rptr. 97, (1965) (upholding the constitutionality of California's quasi-community property statute against constitutional attack based on (1) the due process clause's prohibition against legislation impinging upon "vested rights" via retroactive legislation and (2) the privileges and immunities clause of article IV of the United States Constitution). The *Roesch* court acknowledged that vested property rights may constitutionally be diminished by retroactive marital property legislation when demanded by a sufficiently important state interest. 83 Cal. App.3d at 106, 147 Cal.Rptr. at 593. The court concluded, however, that the interest of California in the marital property was minimal and that the interest of Pennsylvania, the migrant spouse's previous domicile, was substantial. Finally, the *Roesch* court concluded that the non-migrant spouse (appellee) was sufficiently protected under the laws of Pennsylvania. *Id.* at 107, 147 Cal.

Rptr. at 593. The *Roesch* court failed, however, to enunciate the precise rationale for its conclusion that application of the quasi-community property statute to a unilateral migration violated due process. *See* Oldham, *supra*, at 28 n. 134. Professor Oldham noted:

> Unfortunately, the [*Roesch*] court did not state whether it believed that the application of the California law violated due process because California had no interest in the application of its law, or because California had insufficient contacts with the parties, or because California's contacts with the parties were so late in the chronology of the matter that the application of its law would constitute unfair surprise. The court also asserted that the wife was "entitled to the protection of the laws of [Pennsylvania]." This is, at best, a strange statement, since Pennsylvania law did not permit the equitable distribution of the spouses' property at divorce and gave the wife no protection.

*Id.*

■ The appellant also argues that the Texas Constitution[2] as interpreted by the Texas Supreme Court, prohibits the divestment of a spouse's "separate" property. In *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex.1977), the court held that a trial court may not divest one spouse of his separate realty and transfer title to the other spouse. In *Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982), the court adhered to the principle enunciated in *Eggemeyer* and concluded that art. 3.63(b) does not order division of what is considered "separate" property under community property law:

> [W]e hold that the property spouses acquire during marriage, except by gift, devise or descent should be divided upon

---

**1.** *See* Cal.Civ.Code sec. 4803 (West 1970). The California Statute, enacted in 1961, is virtually *identical* to the Texas statute.

**2.** "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the

due course of the law of the land." Tex. Const. art. I, sec. 19. The appellant is entitled to due process even though he is not a domiciliary of Texas. *See Pintor v. Martinez*, 202 S.W.2d 333, 335 (Tex.Civ.App.—Austin 1947, writ ref'd n.r. e.).

divorce in Texas in the same manner as community property, irrespective of the domicile of the spouses when they acquire the property.

*Id.* at 220. The appellant notes, however, that the *Cameron* court expressly held that its decision did not run afoul of the *Eggemeyer* prohibition against divestment because the Texas division of property in the case before it approximated a common law equitable distribution:

> A Texas court that makes a distribution on divorce of the common law marital estate equivalent to what would occur in the common law jurisdiction where the couple was domiciled when they acquired the property, does not impair the rights of spouses in the common law marital property. No divestment transpires because the acquiring spouse loses no more in a Texas divorce than he loses in a judgment rendered in an equitable distribution common law state.... Our judicial adoption of the quasi-community property amendment to Tex.Fam.Code Ann. sec. 3.63 does not violate article I, section 19 of the Texas Constitution.

*Id.* at 222–23 (citation omitted).

■ We conclude that the *Eggemeyer, Cameron,* and *Roesch* decisions do not prohibit application of the quasi-community property statute to this case. The real property that is the subject of this appeal is located in Texas. Texas obviously has a significant interest in controlling the disposition of property located within its boundaries, and indeed, Texas follows the general rule that marital rights of spouses in real property are determined by the law of the place where the land is situated. *See*

*Commissioner v. Skaggs,* 122 F.2d 721, 723 (5th Cir.1941), *cert. denied,* 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210 (1942). Additionally, the appellant, unlike the non-migrant spouse in *Roesch,* has had other significant continuous business and personal contacts with Texas: the Ismails lived in Houston for six years, maintained bank accounts here, and traveled to Texas on various other occasions. Thus, from a due process perspective, appellant's contacts with Texas, when coupled with Texas' interest in protecting the migrant spouse in this case, warrant application of Texas law to the division of the Texas property.[3]

■ Also, we should not interpret the language of *Cameron* to hold that in *every* case where a party receives less in the Texas community property division than he or she would have received under the system of the previous domicile, the party has been deprived of due process. Clearly, where the Texas division of property approximates what another domicile's law requires, the non-migrant spouse may not complain of divestment of "separate" property. But neither can the appellant in this case complain of an unconstitutional divestment of "separate" property under our state's constitution when, through his extensive contacts with this state, and through his personal appearance in this litigation, he has implicitly consented to Texas courts' exercising their jurisdiction in equitably dividing the marital property.

■ Finally, the appellant contends that the application of the quasi-community property statute is unconstitutional, since it constitutes a retroactive application of the statute. We reject this argument. First,

3. *See* Sampson, *Interstate Spouses, Interstate Property, and Divorce,* 13 Tex.Tech.L.Rev. 1285 (1982). It is arguable that a different outcome from that in *Roesch* is warranted in unilateral migratory divorces in Texas. Professor Sampson hypothesized:

> When the spouses reside in different states, the Texas outcome could well be exactly opposite from the *Roesch* decision under California law. After all, the California approach to dividing property is very different from the Texas formulation—a 50/50 split plus possible alimony versus equitable division and no

alimony. Further, California law characterizes property earned or acquired after the spouses actually begin living separate and apart as separate. Texas law is exactly opposite. It is reasonable for a Texas court to equitably divide all the property before it, and in fact, this long has been the accepted procedure.

*Id.* at 1347–48. We should, however, heed the professor's admonition that "[p]redicting future applications of the quasi-community statute may be hazardous to one's health." *Id.* at 1346.

the statute itself appears to have been enacted with the intent that it would apply retroactively. *See* Sampson, *supra*, at 1354. Second, an overriding public interest justifies application of section 3.63(b) of the Family Code to property acquired before the enactment of this statute. *See Cameron*, 641 S.W.2d at 219. If this court were to limit the effect of the statute to property acquired after the effective date of the statute, its remedial benefits would be lost for a generation of ill-fated marriages. Lastly, the Texas Supreme Court, in *Cameron*, judicially adopted section 3.63(b). That court's decision to adopt the statute retroactively is binding on this court.

■■■ We conclude that section 3.63(b) of the Texas Family Code applies to the facts presented in this case and that application of the statute in our case violates neither the United States nor the Texas constitutions. Finally, we overrule the appellant's fourth point of error, complaining of an abuse of discretion in the division of the marital property. The court awarded substantial property, both real and personal, located in Egypt to the appellant.

In considering whether or not the court abused its discretion in the division of property, it is the duty of the court to indulge every reasonable presumption in favor of a proper exercise of discretion by the trial court in dividing the property of the parties. *Thompson v. Thompson*, 380 S.W.2d 632, 636 (Tex.Civ.App.—Ft. Worth 1964, no writ). Further, the court may consider the value of real property lying outside of Texas in an equitable division of property. Texas courts do not assert jurisdiction to determine title to such land but may consider the foreign investment when dividing property. *See In re Read*, 634 S.W.2d 343, 348–349 (Tex.App.—Amarillo 1982, writ dism'd); *In re Glaze*, 605 S.W.2d 721, 724 (Tex.Civ.App.—Amarillo 1980, no writ). After reviewing the evidence, we note that the court considered in its award a substantial amount of property that was valued at over $2,000,000. Approximately one fourth of this amount, consisting of the property located in Houston, Texas, was awarded to the wife. The balance of the property was awarded to the husband. We find that the court did not abuse its discretion in its division of the property.

Appellant's first and fourth points of error are overruled.

## II. CHOICE OF LAW

■■■ In his second point of error, the appellant argues that the trial court erred in deciding this case under Texas law because applicable choice of law principles, both traditional and those contained in the Restatement (Second) of Conflicts, dictate that this case be determined under Egyptian law. He cites *Orr v. Pope*, 400 S.W.2d 614 (Tex.Civ.App.—Amarillo 1966, no writ), and *Joiner v. Joiner*, 131 Tex. 27, 112 S.W.2d 1049 (1938). Both cases, decided long before the enactment of section 3.63(b), merely restate the rule of law that was the impetus for the enactment of the quasi-community property statute: Property acquired by a spouse when domiciled in another jurisdiction was, under pre-*Cameron* common law, characterized according to the previous domicile's laws.

The enactment of section 3.63(b), however, obviates the need to apply this anachronistic conflict-of-laws principle. *See Cameron*, 641 S.W.2d at 222. As Professor Sampson recently wrote:

> [Section 3.63(b)] constitutes a rejection of, or rather a substitution for, the standard conflict-of-laws solution. This remedy has become unworkable in modern mobile America. In short, a legislative solution has been provided to cut through the tangled jungle that has necessarily grown from the inherent limitations of the judge-created answer supplied by traditional conflict-of-laws theory.

Sampson, *supra* note 3, at 1344. Since the court properly applied section 3.63(b) to this case, there was no error in refusing to apply Egyptian law.

Appellant's second point of error is overruled.

## III. FORUM NON CONVENIENS

The appellant contends in his third point of error that the trial court abused its discretion in overruling his motion to dismiss the divorce action on the ground of forum non conveniens. The appellant contends that he was seriously inconvenienced by the Texas litigation, that many documents were in Arabic and had to be translated at great cost, that some documents (not identified or cited to in the record) were not admitted, that some witnesses were unavailable as a result of the inconvenient forum, and that the Texas court could not properly apply Egyptian law. The appellee responds that under Egyptian law, she has no ability to sue for divorce and that Texas provides the only forum for this litigation.

■ In the leading case on the doctrine of forum non conveniens, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the United States Supreme Court highlighted various factors used to determine the appropriate forum:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive ... [U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

*Id.* at 508, 67 S.Ct. at 843; *see also Flaiz v. Moore*, 359 S.W.2d 872, 874 (Tex.1962). An additional important consideration here is whether the forum may properly apply its own law to the controversy. If United States (Texas) law is applicable, the American court should retain jurisdiction rather than grant a dismissal on the ground of forum non conveniens. *See Fisher v. Agios Nicolaos V*, 628 F.2d 308, 314–15 (5th Cir.1980).

■ As detailed previously, the Ismails owned property in both Texas and Egypt. The factors of convenience and availability of evidence thus did not in any significant way favor a granting of the appellant's motion. Also, the trial court properly concluded that Texas law should be applied in accordance with the quasi-community property statute. Under these circumstances, we conclude that the court did not abuse its discretion in denying appellant's motion to dismiss for forum non conveniens.

Appellant's third point of error is overruled.

## IV. ATTORNEY'S FEES

In his fifth point of error, the appellant argues that the trial court abused its discretion by awarding appellee an excessive amount of attorney's fees. The parties agree that the trial court has the power to award attorney's fees to either side in a divorce action, *In re Read*, 634 S.W.2d at 345, as long as the fees awarded were proven to be reasonable and necessary. *Cluck v. Cluck*, 647 S.W.2d 338, 340 (Tex. App.—San Antonio 1982, writ dism'd). The appellant's complaint is that a "large portion" of the fees was unnecessary and resulted from the pursuit of meritless matters and other dilatory tactics.

■ In determining whether a verdict is excessive, the appellate court must review only the evidence favorable to the verdict. *See Southern Pacific Transportation Co. v. Peralez*, 546 S.W.2d 88, 98 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). A verdict will be set aside only where the evidence is insufficient to support the judgment for the amount entered or where the amount awarded is manifestly or so excessive as to suggest passion, prejudice, or other improper influence. *See Muller v. Reeher*, 520 S.W.2d 599 (Tex. Civ.App.—Ft. Worth 1975, no writ). However, the reasonableness of attorney's fees is a question of fact and must be supported by competent evidence just as any other fact issue. *Great American Reserve Insurance Co. v. Britton*, 406 S.W.2d 901, 907 (Tex.1966); *Meshwert v. Meshwert*, 543

S.W.2d 877 (Tex.Civ.App.—Beaumont 1976), *aff'd*, 549 S.W.2d 383 (Tex.1977).

 The only evidence in the record pertaining to appellee's attorney's fees was a stipulation that $200 per hour was a reasonable fee, and brief testimony by appellee's attorney that she spent very little time attempting to obtain custody of the two children born of the marriage. There is no testimony showing the number of hours the attorney worked on the preparation and trial of the case. The evidence is insufficient to support an award of attorney's fees. Under these circumstances, in the interest of justice, we find that a remand to develop this aspect of the case should be ordered. *Harding v. Harding*, 461 S.W.2d 235, 237 (Tex.Civ.App.—San Antonio 1970, no writ).

Appellant's fifth point of error is sustained.

## V. SANCTIONS

In his last point of error, the appellant argues that the trial court abused its discretion in entering monetary sanctions in the amount of $15,000 against him. He contends that the sanctions were unwarranted because they were not made to secure compliance with discovery rules. The appellee contends that the property inventory sought by the court is a specie of "discovery" and that the court properly ordered the sanctions.

Our record contains a motion for sanctions filed on August 1, 1983. In that motion, the appellee sought an order compelling the appellant to file a sworn inventory, among other things. A hearing on the motion was set for August 5. The docket sheet contains no indication of a hearing on that date, but the statement of facts shows that hearings were held from September 23, 1983, to October 6, 1983.

On October 6, 1983, the trial court ordered the parties to file sworn inventories of all assets and debts within 45 days. On February 10, 1984, the appellee's attorney requested that sanctions be levied against the appellant for his failure to comply with the October 6 order. On February 22, 1984, the court signed an order stating that the motion for sanctions would be taken under advisement. The trial court announced its decision to levy sanctions against the appellant on May 16, 1984, and signed an order on August 9, 1984. The appellant contends that an inventory was filed on December 14, 1983 (68 days after the order).

The Rules of Civil Procedure provide for sanctions in the event a party fails to comply with a discovery order. Under old rule 168, repealed effective April 1, 1984, trial courts were given the power to impose sanctions if a party was found to be "abusing the discovery process in seeking, making or resisting discovery under this Rule." Tex.R.Civ.P. 168, sec. 8. (Vernon Supp. 1985); *see also* Tex.R.Civ.P. 170 (Vernon 1976). Provisions for the imposition of sanctions were consolidated in 1984 in rule 215. The new rule 215 allows sanctions in pending actions when it is shown that a party fails to comply with an order of discovery. Tex.R.Civ.P. 215, sec. 2b. "Discovery" is not defined in the rules, but there is some authority that inventories are "discoverable" through the Rules of Civil Procedure. *See* 15 W. Dorsaneo & J. McKnight, *Texas Litigation Guide* sec. 363.100(1)(e) (1985).

 The Family Code provides that the trial court may issue temporary orders requiring either party to file a sworn inventory. Tex.Fam.Code Ann. sec. 3.58(c)(1) (Vernon Supp.1985). If a party fails to comply with a temporary order, the party may be punished under the court's contempt power. Tex.Fam.Code Ann. sec. 3.58(f) (Vernon Supp.1985). We hold that the request for an inventory in a divorce case is a specie of discovery, and that the sanctions provided for in Tex.R.Civ.P. 215, as well as those granted in sec. 3.58(c)(1), are available to the trial court to punish or secure compliance with its order to furnish an inventory.

 Because we have held that the remedy was available to the trial court, we will limit our review of the trial court's

action to whether there has been a clear abuse of discretion. *See Southern Pacific Transportation Co. v. Evans,* 590 S.W.2d 515, 518 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). By the appellant's own admission, he failed to file the inventory within 45 days as required by the order. On the state of the record, and in the absence of any findings of fact or conclusions of law, we find no abuse of discretion.

The part of the judgment awarding attorney's fees is reversed, severed, and remanded to the trial court for a hearing; the remainder of the judgment is affirmed.

DUNN, J., dissenting.

DUNN, Justice, dissenting.

My dissent is respectfully directed to appellant's last point of error. I concur with the majority in their disposition of all other points.

In his last point of error, the husband argues that the trial court abused its discretion in entering monetary sanctions in the amount of $15,000 against him.

A review of the record indicates that the wife filed a motion for sanctions on August 1, 1983. She alleged that her husband failed to pay fines, attorney's fees, and temporary alimony, and failed to file his sworn inventory.

Following a hearing on the matter on October 6, 1983, the trial court issued an order requiring the husband to pay past due alimony, certain costs, and attorney's fees to the wife's attorney and ordered each of the parties to file a sworn inventory by November 20, 1983.

On February 10, 1984, a hearing was held on the wife's motion requesting sanction against the husband for his failure to comply with the court's October 6, 1983 order. The testimony at the hearing concerning the wife's request related to the husband's failure to pay temporary alimony, failure to pay his wife's attorney's fees, and failure to file an inventory on November 20, 1983. The husband justified his delay in filing his inventory because of the necessity of having to send the inventory to Egypt three times between the October 6, 1983 order and the date the husband's inventory was filed, i.e. December 14, 1983. After a hearing, the court signed an order dated February 22, 1984, stating that the motion for sanctions would be taken under advisement. There were no further orders of the court regarding the inventories nor were either of the parties held in contempt.

On August 9, 1984, the trial court levied sanctions against the husband in the amount of $15,000 "for his acts and omissions as alleged" by the wife.

Provisions for the imposition of sanctions were consolidated in Tex.R.Civ.P. 215, amended December 1983, effective April 1, 1984.

Rule 215 sets out the specific circumstances under which a party may file a motion for sanctions. More specifically, Rule 215(1)(b) provides that a party may apply for sanctions:

(1) if a party fails to comply with Rules 200-2b, 201-4 or 208; or

(2) if a party fails:

(a) to appear for deposition; or

(b) to answer either oral or written questions; or

(3) fails to serve answers or objections to interrogatories under Rule 168; fails to respond to request for discovery under Rule 167; or fails to respond or permit inspection under Rule 167.

Even though Rule 215 does not list failure to file an inventory ordered under sec. 3.58 of the Texas Family Code as one of the circumstances under which a party may invoke Rule 215, the wife contends that an inventory is a specie of "discovery," and therefore, the court had authority to award sanctions under Rule 215.

The Texas Family Code provides that the trial court may issue temporary orders requiring, among other things, either party to file a sworn inventory. *See* Tex.Fam. Code Ann. sec. 3.58(c)(1) (Vernon Supp. 1985). Further, the legislature saw fit to specifically set out in sec. (f) the provision

for punishment if a party fails to comply with a court's temporary order under this section. Tex.Fam.Code Ann. sec. 3.58(f).

Rule 215 does not include inventories, ordered pursuant to sec. 3.58 of the Tex. Fam.Code, in the list of circumstances under which a party may request sanctions. In fact, the legislature amended sec. 3.58(f), effective September 1, 1983, to provide that the violation of any orders issued under this section would be punishable by contempt. If the legislature had intended that inventories, ordered pursuant to sec. 3.58, should be interpreted as a specie of discovery within Rule 215 "Abuse of Discovery; Sanctions," it could easily have included same in its specific listing of circumstances to which the rule should apply. We note that Rule 215 was amended a few months after the legislature amended sec. 3.58(f).

Assuming, arguendo, that the inventory is a specie of discovery, on a similar state of facts, the Beaumont Court of Appeals held that the trial court abused its discretion in granting sanctions. *Illinois Employers Insurance Co. v. Lewis*, 582 S.W.2d 242 (Tex.Civ.App.—Beaumont), *writ ref'd n.r.e. per curiam*, 590 S.W.2d 119 (Tex.1979). The defendant filed their "answers to interrogatories" two weeks late but before the court applied sanctions similar to this case. The Texas Supreme Court approved the holding by the Beaumont Court specifically on the point of abuse of discretion. *Lewis*, 590 S.W.2d at 120. The Texas Supreme Court further stated that only where a party *wholly* fails to comply, can the other party move for imposition of sanctions without first seeking and obtaining an order from the court requiring further action, and then, if the party fails to comply, the court would be authorized to act as provided under Rule 215a. *Id.* at 120.

I would hold that the court not only abused its discretion, but had no authority to award $15,000 against the husband as sanctions for failure to file an inventory under Rule 215 of the Texas Rules of Civil Procedure.