HUDSON v. BRADLEY.

Opinion delivered April 2, 1928.

1. GIFTS—SUFFICIENCY OF DELIVERY.—Where a father took out time certificates payable to the order of himself or his son with money which he had saved, this did not constitute a gift to the son of the certificates or the money represented by them, where the certificates were never delivered to the son and remained in the father's possession until his death.

2. DOWER—ANTENUPTIAL CONTRACT.—A finding that a wife, unable to read or write, signed an antenuptial contract waiving her right to dower in her future husband's estate or that she authorized its execution, *held* contrary to the weight of evidence in a suit involving the question of recovery of dower interest after the husband's death.

Appeal from Monroe Chancery Court; *S. H. Mann,* Special Judge; reversed.

*C. F. Greenlee,* for appellant.

*Bogle & Sharp,* for appellee.

HUMPHREYS, J.    Two questions are presented by this appeal and cross-appeal for determination.    The first question to be determined is whether Joe Hudson is entitled to $6,000 on deposit in the Bank of Brinkley and $1,000 on deposit in the Monroe County Bank, or whether W. T. Hudson was seized and possessed of said money at the time of his death in 1926.    The certificates of deposit are as follows:

"Certificate of Deposit.

"Brinkley, Ark., Sept. 6, 1925.    No. 1787.

"Bank of Brinkley.

"W. T. Hudson has deposited in this bank exactly six thousand no/100 dollars ($6,000), payable to the order of himself or Joe Hudson, his son, in current funds, on the return of this certificate, properly indorsed, twelve months after date, with interest at 4 per cent. per annum.    No interest after maturity.

"Not subject to check.

"L. H. Bradley, Cashier."

"Certificate of Deposit.

"Not subject to check.

"Monroe County Bank 81-190—No. 994.

"Brinkley, Ark. 5-21-26.

"This certifies that W. T. Hudson or Joe Hudson has deposited in this bank exactly one thousand dollars ($1,000), payable to his or either own order 12 months after date, with interest to maturity only at the rate of 4 per cent. per annum on return of this certificate.

"No interest after maturity.    Non-negotiable.

"L. W. Brown, Cashier."

These certificates of deposit were found in the trunk of the deceased after his burial, at the home of himself and appellant. Joe Hudson, a son of the deceased, obtained the key to the trunk from appellant, and found the certificate of deposit therein. He claimed the money as a gift *inter vivos* from his father. He testified relative to the gifts as follows:

"My father told me that this money was placed in bank so that no one could touch it, only himself and me, and at his death I would have full possession of it; that the rest of the outfit had done got all that was coming to them, and that this money belongs to me. My father told me that if Mrs. Hudson was left any money she would throw it away, therefore he did not want her to have any money; I refer you to marriage contract on file. My father told me about the money being a joint account at the time I visited him in the spring of 1924."

Joe Hudson insists that he is the sole owner of the money, whereas the widow and other heirs, who are grandchildren of the deceased, and nieces and nephews of Joe Hudson, and the administrator of the estate of W. T. Hudson, deceased, insist that the money belongs to his estate and is subject to division among them according to the statute of descent and distribution.

In the case of *Lowe* v. *Hart,* 93 Ark. 549, 125 S. W. 1030, this court defined gifts *inter vivos* in substance as follows: To constitute a gift a donor must actually deliver the property to a donee with intent to pass the title immediately, and the donee must accept the same. See also *Stifft* v. *W. B. Worthen Co., ante,* p. 585.

The evidence in the instant case does not meet the requirements of this rule. The time certificates of deposit were in the joint names of W. T. Hudson and Joe Hudson, and were not subject to check. The money constituted the savings of W. T. Hudson, and the certificates themselves were never delivered to Joe Hudson, but were retained under lock and key by W. T. Hudson. There was no actual delivery and acceptance of either the certificate or the money they represented in such manner

that W. T. Hudson surrendered dominion over them. W. T. Hudson could at any time during his life have presented the certificates and got the money out of the bank, without the consent or permission of Joe Hudson. Joe Hudson could not have presented the certificates and got the money, because he never had possession of them. There was no intention in the acts of the parties to pass the title to the certificates or money. The evidence is insufficient to support a gift.

In addition to claiming the money as a gift, Joe Hudson interposed the further defense to appellant's claim for dower that she entered into an antenuptial contract with his father, waiving her right of dower in and to his estate. The contract is as follows:

"This agreement made and entered into this the 2d day of December, by and between W. T. Hudson and S. B. Hudson, is as follows: That whereas we, the said W. T. Hudson and S. B. Hudson desire and have decided to be remarried again, and become as husband and wife, and now before said marriage it is hereby agreed and fully understood, and in consideration of this agreement and of said marriage, and the further consideration that we have once divided our property between each other mutually and agreeably to each of us, it is now hereby agreed and understood by and between each of us that I, the said S. B. Hudson, do hereby agree and waive all my right or possibility and future claims or any and all dower or financial claims that would come to me or be allowed to me under the matrimonial laws of the State of Arkansas. To make it more explicit, I, S. B. Hudson, waive all right to a dower or other claims in or to said W. T. Hudson's estate either during his natural life or after his death, and our property to be kept separate and distinct apart and in each other's name and control as separate individuals do, with no future claims of dower or curtesy whatever. And it is hereby understood and agreed that, in case of any disagreement between us that would result in separation as husband and wife, each one

of us to take the individual property owned by us individually, and that to be the final settlement between us as herein agreed and made binding between us.

"Witness our hands and seals this the second day of December, 1916.

"W. T. Hudson

her

"Mrs. S. B. (x) Hudson

mark

"Witness, R. M. Henderson.

"Witness to mark, R. M. Henderson."

"State of Arkansas, county of Monroe.

"On this the 2d day of December, 1916, appeared before me, R. M. Henderson, a justice of the peace, duly commissioned and acting, Mrs. S. B. Hudson, to me well known, and acknowledged that she had signed the foregoing transfer, for the consideration and purposes therein mentioned, of her own free will and accord.

"Witness my hand as such justice of the peace, on this the 2d day of December, 1916. R. M. Henderson, J. P."

Certificate of Record.

"State of Arkansas, County of Monroe.

"I, R. A. Holloway, circuit clerk and ex-officio recorder of the county aforesaid, do hereby certify that the annexed and foregoing instrument of writing was filed in my office on 1st day of December, 1917, at 2:30 o'clock P. M., and that the same is now duly recorded with the acknowledgments and certificates thereon in record book 21, page 46.

"In witness whereof I have hereunto set my hand and affixed the seal of said court this 13th day of December, 1917. R. A. Holloway, circuit clerk and ex-officio recorder. By————————." (Seal).

Appellant denied signing the contract or authorizing any one to sign it for her. She said her husband proposed entering into such a contract before their second marriage, but that she declined to do so, and that she

never heard of nor saw the purported contract until it was shown to her by Mr. Milwee after her husband's death. Appellant could neither read nor write. Appellant's second initial is V, and it will be observed that it appeared as B on the contract. Counsel for appellee argue that the contract had been on record for nearly ten years. We do not see how that fact can help them, unless they had shown that appellant knew of the existence of the contract and that same had been recorded.

The trial court's finding to the effect that appellant signed the antenuptial contract was contrary to the weight of the evidence.

The trial court's finding against a gift of money by W. T. Hudson to Joe Hudson is in accordance with the weight of the evidence.

The judgment on the cross-appeal is affirmed, but the judgment on the direct appeal is reversed and the cause is remanded, with directions to allow the widow one-third of the money and to divide the balance between the heirs according to the statute of descent and distribution.