## REESE v. FIRST NAT. BANK OF BELLVILLE et al.

### No. 11789.

Court of Civil Appeals of Texas. Galveston.

July 11, 1946.

Rehearing Denied Aug. 1, 1946.

Second Rehearing Denied and Opinion Corrected Oct. 3, 1946.

Weldon B. Davis, of Bellville, and Hollis Massey, of Columbus, for appellant.

W. I. Hill, of Bellville, Richard Spinn, of Brenham, and Rollins & McWhirter, of Greenville, for appellees.

CODY, Justice.

This proceeding was originated below by the First National Bank of Bellville as a stakeholder's suit to have it judicially determined to whom the bank was legally bound to pay the following described time deposit certificate:

"Bellville, Texas, September 9, 1944, No. 5333.

"This certifies that Will J. Jackson has deposited with the First National Bank of Bellville 4400 Dol's 00 Cents. Dollars $4400.-00, payable to order of himself or Maggie Reese in current funds on the return of this certificate properly indorsed, 6 months after date with interest at the rate of 1 per cent per annum. No interest after maturity." (Signed) "H. O. Fisher, V. P. and Cashier."

A short time prior to the maturity date of the certificate the said Will J. Jackson, named as a payee therein, died intestate, and his heirs were named by the bank as those who were urging conflicting claims to the fund.

Appellant, Maggie Reese, who was one of the surviving children of Will J. Jackson, and who is named as alternative payee in the certificate, filed her answer asserting that she was the exclusive owner of the certificate and possessed the sole right by the express terms thereof to receive payment thereof; and filed a cross complaint against the other claimants who are named in the bank's bill of interpleader. In the alternative she pled that, if she was not entitled by the express terms of the certificate to receive payment thereof as being the only surviving payee, then the said Jackson and the bank, at the time of making the contract which culminated in the certificate, had mutually agreed that the interest bearing deposit was made upon the positive and distinct understanding that if the said Jackson died before it was paid to him, the same was to be paid to appellant, Maggie Reese. She asked in her pleading that the court reform the certificate to make it speak such mutual understanding and agreement. And in her pleading she called upon the bank "to confess and admit" that the true understanding and agreement which the draftsmen of the certificate had attempted to embody therein was that the deposit should, in case of the said Jackson's death, be paid to appellant.

The appellees were the heirs of Will J. Jackson (other than appellant Maggie Reese), and it is sufficient to say of the allegations of their pleading that they claimed ownership of the fund in question as forming a part of the said Jackson's estate to which they succeeded under the laws of descent and distribution.

By supplemental petition the bank "confessed and admitted" the matters which appellant had in her pleadings so requested that it do.

Trial was before the court without a jury. Judgment was rendered that the fund be paid over to the administrator of the estate of Will J. Jackson, deceased, and distributed as a part of his estate to his heirs. From the judgment Maggie Reese alone has appealed.

Pursuant to appellant's request the court filed conclusions of law and fact, to some of which conclusions appellant objected and excepted. But there was no objection to the court's findings to the following effect, namely:

That the money used to purchase the time deposit certificate belonged to Will J. Jackson, and at the time of the purchase thereof same was delivered to him. That he was then about 80 years old, and not in the best of health. That after the purchase Jackson kept the certificate in his exclusive possession and under his exclusive control till he died. And there was never any kind of delivery thereof to Maggie Reese during his lifetime.

The findings of fact objected to by appellant were to the following effect:

That Will J. Jackson purchased the time certificate for the benefit of himself alone. That he made Maggie Reese alternate payee in the certificate a matter of convenience so that she could go to the bank to secure funds and bring same to him as his property, if he should become physically unable to do so. That he did not intend that the time certificate should become exclusive property of Maggie Reese after his death, but should become the property of all his children.

In response to appellant's request for additional conclusions, the court found: That his original findings covered the case; that the evidence of the banker H. O. Fisher in regard to the intentions of Will J. Jackson was inadmissible; but that if it was admissible, it was too uncertain upon which to base a judgment that Jackson intended Maggie Reese should have the time certificate at his death, or to reform the instrument. That the proper legal predicate to reform the instrument was not laid.

Appellant predicates her appeal upon these points:

I. That the certificate being payable to Will J. Jackson or Maggie Reese, or order, she was entitled to the entire proceeds by virtue of the certificate's express provisions.

II. That if not so entitled to such proceeds by the express terms of the certificate, then the certificate is of doubtful meaning, and the court erred in refusing to consider parol evidence to show the construction placed on the instrument by the parties themselves.

III. That it is undisputed that, at the time the certificate was issued, Jackson and the Bank intended the proceeds thereof should belong to Maggie Reese upon the death of Jackson. Therefore, if appellant is not entitled to the proceeds of such certificate by virtue of its express provisions, then she is entitled to have the same reformed so as to speak the true intent of Jackson and the bank.

We overrule appellant's first point. Under it appellant urges that the certificate by its express terms invested her with a present vested though defeasible right to the payment of the time deposit, similar to the right of a beneficiary of a life insurance policy. Describing the right of the beneficiary of a life insurance policy as the right of the third party for whose benefit the insurance contract was made, the Supreme Court, speaking through Judge Smedley, said in Edds v. Mitchell, Tex.Sup., 184 S. W.2d 823, 830, "If the policy gives the insured the power to change the beneficiary, the right of the beneficiary named in the policy is not indefeasible, but it is nevertheless a vested right" (citing authorities). The facts in the Edds case were that certain United States Savings Bonds were made payable to a Mrs. Rhode, as the registered holder thereof, and, on her death, to a Mrs. Edds. Mrs. Rhode died without having delivered the bonds to Mrs. Edds, and it was insisted against the claim of Mrs. Edds to the ownership of the bonds, that such transaction was either a gift, to take effect at the death of Mrs. Rhode, and

so invalid, or that the provision of the bonds making them payable to Mrs. Edds on the death of Mrs. Rhode, was a testamentary disposition which failed to comply with necessary statutory requirements. But the court held that the contract made by the government with Mrs. Rhode was a contract to pay in the event of the death of Mrs. Rhode the sum and interest thereon specified in the bonds to Mrs. Edds, and that the right thereby vested in Mrs. Edds was in every material respect similar to the right of a beneficiary of a life insurance policy, where the insured had retained the power to change the beneficiary.

The obligation of the government under the terms of a U. S. Savings Bond which by its terms is made payable to a third party beneficiary, differs from the obligation of a bank which issues a negotiable certificate of deposit. "The obligation assumed by the bank which issues a negotiable certificate of deposit is to pay the fund represented by the instrument to the *lawful holder* of the certificate, whoever he may happen to be, and not necessarily to repay the amount deposited to the depositor." (Emphasis ours) 7 Amer.Jur., 354. The certificate in question is a negotiable certificate of deposit. It contains the standard language of a negotiable certificate, and is free of ambiguity. It was issued by the bank to Will J. Jackson upon the consideration named therein being paid out of money belonging to him. It contains no expression making it payable to appellant on the death of Will J. Jackson to change the clearly expressed obligation of the bank to pay the same to the legal holder in due course. Since Jackson died intestate, and was the legal holder in due course of the certificate at the time of his death, it passed as a part of his estate to his heirs, subject to administration, under the laws of descent and distribution. See Hudson v. Bradley, 176 Ark. 853, 4 S.W.2d 534; Peterson v. Weiner, Tex.Civ.App., 71 S.W.2d 544. An instrument is none the less negotiable now for having an alternative payee. Art. 5932, Sec. 8; See 6 Tex.Jur., 630.

■ What has been said about the certificate being unambiguous applies equally to appellant's second point complaining that such certificate is of doubtful meaning, etc. We overrule the second point.

Under her third point appellant urges in the alternative that the court erred in refusing to reform the certificate in order to make it payable to appellant on Jackson's death.

■ H. O. Fisher, the vice-president and cashier of the bank, testified that Jackson told him to make the certificate payable to Jackson or appellant, because if anything happened to Jackson he wanted appellant to have the money. The court ruled that this testimony was not admissible, but that if it were admissible, it was too uncertain to authorize the certificate being reformed so as to make it payable to appellant on Jackson's death. Since the testimony was clearly inadmissible, we need not consider its sufficiency. The testimony aforesaid upon its face proclaims itself to be hearsay. And, while it may be in the nature of res gestae, it is not competent. "It is only when the thing done is equivocal that it is competent to prove declarations accompanying it as falling within the class of res gestae." 32 C.J.S., Evidence, § 407, p. 23; Hargreaves v. Keogh Storage Co., 250 Mass. 339, 145 N.E. 456. Here "the thing done" was the purchase by Jackson of a negotiable certificate of deposit executed and delivered to him by the bank. The transaction was as free of equivocalness as the certificate of ambiguity.

■ What has been said relative to the testimony of Mr. Fisher applies with equal force to the allegations of the bank's supplemental petition, which appellant urges made out her right to have the certificate reformed, so as to make it payable to her on Jackson's death. Said allegations were to the effect that the bank's officer, who drafted the certificate, Mr. Fisher, lacked the necessary legal learning and skill to reduce the true agreement of Jackson and the bank (as indicated above) to writing. Whether the allegations were sufficient to allege a mutual mistake for which a plain and unambiguous instrument would be reformed, we need not determine. But see Moore v. Giesecke, 76 Tex. 543, 13 S.W.

290. Said allegations were not admissible against appellees on any theory. See Justin McCarty, Inc. v. Ash, Tex.Civ.App., 18 S.W.2d 765, 768. We overrule appellant's third point.

The judgment is affirmed.

### On Motion for Rehearing.

■ Appellant's position has heretofore been that the certificate of deposit here in question is negotiable. Now, in her motion for rehearing, she changes her position "upon a more thorough search of the law" and concludes that the certificate of deposit is non-negotiable, due to the fact that it is payable in "current funds," citing an opinion of the Commission of Appeals on a certified question, which opinion was adopted by the Supreme Court. First State Bank of Annona v. Hidalgo Land Co., Tex.Com.App., 268 S.W. 144, 146.

It is true that the opinion in the cited case held that a certificate of deposit, which was otherwise in form negotiable, was non-negotiable where it was made payable in "current funds." The court recognized, that since the adoption of the Uniform Negotiable Instruments Act, the courts of other states generally held such an instrument to be negotiable. But prior to the adoption of such act it had been settled in Texas that an instrument payable in "current funds" was non-negotiable, and the Supreme Court felt that the act did not change the law in this respect. The Legislature was in session at the time, and the Supreme Court called the matter to the Legislature's attention, and in effect recommended that subdivision 5 of Section 6 be amended so as expressly to provide that the negotiable character of an instrument should not be affected by the fact that " 'It is payable in currency or current funds * * *. The words "currency", "current money" or "current funds" *shall mean such circulating media as are legal tender or are lawfully and actually circulating at par with legal tender at the time and place of payment.' "* (Emphasis ours.) But for whatever reason, no such amendment has been adopted.

The opinion in the cited case was handed down in January, 1925. Since that time the Congress has abolished the distinction between "money" and "currency" or "current funds," by making the circulating notes of banks, empowered to issue such notes, legal tender. "All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations) heretofore or hereafter coined or issued, shall be legal tender for all debts * * *" Title 31, Chapter 9, Legal Tender Section 462, U.S.C.A. Since all currency or current funds lawfully in circulation was made legal tender in 1933, the fact that the certificate in question was made payable in "current Funds" in 1944 did not prevent it from being a negotiable instrument. In other words, "current funds" is now legal tender, and there is now no distinction between "money", "currency" and "current funds".

■ We expressly sustained the position of appellant that the certificate could not be held to be non-negotiable on the ground that provision was made therein for payment to an alternative payee. And the appellees here never made any contention that the instrument was non-negotiable, but, to the contrary, their position was based throughout on the assumption that it was negotiable. During oral argument the question was put from the bench if the provision that payment was to be in "current funds" had any effect, and it was answered that such provision was standard in certificates of deposit. We think that it comes too late for a party to change his position, after the judgment of the trial court has been affirmed, and contend for the first time on motion for rehearing that the instrument in question was non-negotiable for any reason.

Appellant's motion for rehearing is overruled.