Joseph N. LONGACRE, Appellant,

v.

Kathleen KNOWLES, Individually and as Administratrix of Estate of Merit Gustavis Longacre, Deceased, Respondent.

No. 47546.

Supreme Court of Missouri,
Division No. 2.
Feb. 8, 1960.

Motion for Rehearing or for Transfer to Court en Banc Denied March 14, 1960.

Donald B. Russell, and Robert L. Ewing, Ewing, Ewing, Ewing, Carter & Wight, Nevada, Mo., for appellant.

Everett E. Teel, Nevada, Mo., for respondent.

STOCKARD, Commissioner.

This suit was originally filed pursuant to Section 473.357 RSMo 1949, V.A.M.S., in

the probate court of Vernon County for the determination of title to certain personal property held by the administratrix of the estate of Merit Gustavis Longacre, known and referred to in the record as Gus Longacre. Upon appeal to the circuit court the judgment was in favor of the administratrix, and plaintiff has appealed.

Gus Longacre died intestate on January 28, 1957, leaving as his sole heirs Joseph N. Longacre, plaintiff-appellant, a nephew, and Kathleen Knowles, a niece, who individually and as administratrix is defendant-respondent. After the death of Gus Longacre the following notes and bonds were found among his possessions and which the administratrix contends are assets of his estate.

Exhibit 1. A note executed by Dorris L. Sherrell and Danny D. Sherrell, for $4,200 payable to "M. Gus Longacre and Joe Longacre or order."

Exhibit 2. A note executed by Otis C. and Wilda Rider for $3,000 payable "to the order of Gus Longacre and/or Joe N. Longacre, or assigns."

Exhibit 3. A note executed by Donald and Evelyn Irwin for $1,470 payable "to the order of Gus Longacre or Joe N. Longacre."

Exhibit 4. A note executed by Leonard H. and Wilma N. Bogart for $4,000 payable "to the order of Gus Longacre and/or Joe N. Longacre, or survivor."

Exhibit 5. A note executed by C. E. and Helen A. Cavanaugh for $2,600 payable "to the order of Gus or Joe N. Longacre on demand."

Exhibit 6. A note executed by R. C. and Mrs. R. C. Banes for $1,900 payable "to the order of Gus Longacre or J. N. Longacre."

Exhibit 7. A note executed by Carl and Lois Neas for $1,500 payable "to the order of Gus Longacre or Joe Longacre."

Exhibit 8. A note executed by H. N. Comstock, Jess M. Banes and Nona Mae Comstock for $2,250 payable "to the order of Gus Longacre and/or Joe N. Longacre, as joint tenants with right of survivorship and owners of this security."

Exhibit 9. A note executed by Jack D., R. Vinona and Jess M. Banes for $1,400 payable to "Gus Longacre or J. N. Longacre or order."

Exhibits 10 and 11. Two corporate bonds, each in the amount of $500, issued by Lipscomb Grain & Seed Company, registered in the names of "Mr. Gus Longacre or James O. Longacre."

Exhibits 12 and 13. Two corporate bonds, each in the amount of $500, issued by Lipscomb Grain & Seed Company, registered in the names of "Mr. Gus Longacre or Roxie L. Marlow."

All the interest of James O. Longacre and Roxie L. Marlowe has been assigned to appellant. Since the death of Gus Longacre some of the notes have been paid and the funds, by agreement, are being held in escrow pending this appeal. Partial payments were made on some notes but not in sufficient amounts to affect the jurisdiction of this court.

Plaintiff's contention is that Gus Longacre and the other person named as payee or owner were joint owners of the notes or bonds with the right of survivorship, and that at the death of Gus Longacre the person named as copayee or co-owner became the sole owner.

■ Although the term "joint tenancy" properly refers to an interest in land, it frequently is used in reference to personal property, and it is recognized in Missouri that any personal property subject to being possessed in severalty is subject to joint ownership. Johnston v. Johnston, 173 Mo. 91, 73 S.W. 202, 61 L.R.A. 166, 96 Am.St. Rep. 486. An estate in joint tenancy is one held by two or more persons jointly with equal rights to share in its enjoyment during their lives and having the right of survivorship. 14 Am.Jur. Cotenancy, § 6. "A

joint tenancy is based on the theory that together the joint tenants have but one estate; they hold per my et per tout—by the moiety or half *and* by the whole." In re Gerling's Estate, Mo.Sup., 303 S.W.2d 915, 917. It has frequently been held that to create a joint tenancy the tenants or owners must have one and the same interest (unity of interest); the interests must accrue by one and the same conveyance (unity of title); they must commence at one and the same time (unity of time); and the property must be held by one and the same undivided possession (unity of possession). 14 Am.Jur. Cotenancy, § 7; 48 C.J.S. Joint Tenancy § 3c; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214. The intention of the parties is the principal controlling factor whether or not a joint tenancy or joint ownership is created. 48 C.J.S. Joint Tenancy § 3d.

Generally, in the absence of a statute pertaining to the matter (see Section 363.470 RSMo 1949, V.A.M.S., pertaining to bank deposits and Section 442.450 pertaining to the grant or devise of realty) in order for a joint tenancy to be created the intent to do so must clearly be expressed by appropriate language understandingly used. McElroy v. Fluker, Mo.Sup., 265 S.W.2d 361. Where the instrument is silent or ambiguous as to the nature of the estate or interest created, as a rule it will not be construed to create a joint tenancy. 48 C.J.S. Joint Tenancy § 3d, p. 918. We shall first consider whether a joint ownership was created in those notes and bonds where the payees or owners were named in the alternative.

"In most of the cases in which the question has arisen it has been held that no joint tenancy, with right of survivorship, was created by a note or certificate of deposit providing for payment in the alternative to two or more payees." Annotation, 171 A.L.R. at page 528. See also the cases there cited and Knox v. Maher, 261 Ill. App. 159, and Newitt v. Dawe, 61 Nev. 472, 133 P.2d 918, 144 A.L.R. 1462. This result

is necessarily and properly reached because the language used does not indicate an intent to create a unity of interest, but on the contrary it indicates an intent that the interest of one is to be to the exclusion of the other, and there is not an equal right in both to share in the enjoyment of the property. See Reese v. First National Bank of Bellville, Tex.Civ.App., 196 S.W.2d 48, 171 A.L.R. 516. As stated in Hemphill v. Jackson, Mo.App., 306 S.W.2d 610, 615, " 'The word "or" is disjunctive in its very nature, and is incompatible with tenancy in common [or joint tenancy] because it infers one or the other, but not both.' "

The above result is also required in the situation where the note (exhibit 2) was made payable to "Gus Longacre and/or Joe N. Longacre, or assigns." The use of the phrase "and/or" is confusing and conflicting, "But the commonly accepted meaning * * * is 'Either *and* or *or*.' " Coplen v. Zimmerman, Mo.Sup., 271 S.W.2d 513, 515. As here used the term necessarily results in the declaration of the intention that Gus Longacre should retain the choice of maintaining his ownership of the note to the exclusion of his nephew if he so desired, and as subsequently shown the evidence discloses that he did so.

Plaintiff contends that the words used are ambiguous and we can look to the surrounding circumstances and, notwithstanding the language used, determine that Gus Longacre really intended to create a joint tenancy with right of survivorship in the co-payees and co-owners. See Hemphill v. Jackson, supra.

At least one maker of each note which was made payable in the alternative testified except the makers of the note identified as exhibit number 9. The substance of the testimony in each case was that Gus Longacre told the makers that he was including Joseph Longacre as a copayee so that if anything happened to him the note would then be the property of Joseph Longacre, but that the makers understood that the note was to belong to Gus Longacre during

his lifetime and they were to make all payments of interest and principal to him. The four bonds were issued by the Lipscomb Grain & Seed Company. Mr. Lipscomb testified that Gus Longacre first had the bonds issued to him alone, but that three days later he "said he wanted to make two of those bonds to James O. Longacre—Gus Longacre or James O. Longacre and two of them to Roxie L. Marlowe—Gus Longacre or Roxie L. Marlowe." Mr. Lipscomb then wrote with pen and ink following the typed name of Gus Longacre the words "or James O. Longacre" on two bonds, and "or Roxie L. Marlowe" on the other two bonds. Mr. Lipscomb testified that it was his "understanding" that the bonds "were Gus Longacre's until he died," and "then they would go to James O. Longacre and Roxie Marlowe—that's what he told me. * * * They couldn't get them until he died the way I understood it the way he was wanting them made." Gus Longacre advanced all the money to purchase the bonds and make the loans evidenced by the notes, the persons named as copayees or co-owners knew nothing about the transactions, and Gus Longacre retained full and complete control of the notes and bonds.

In referring to the requirements to create a joint tenancy with right of survivorship in personal property, this court in Napier v. Eigel, 350 Mo. 111, 164 S.W.2d 908, at page 911, said: "A mere uncompleted intention to grant an interest at death, or at some time in the future, or upon the happening of some contingency is not enough." The circumstances surrounding the execution of the above referred to notes, and the issuance of the bonds, indicate an intention on the part of Gus Longacre to grant an interest to the person named at his death as distinguished from the intention to grant a present interest with equal right to share in the enjoyment of the property during their lives. Therefore, the circumstances are consistent with the language used. We necessarily conclude that no joint tenancy with right of survivorship was created in the notes and bonds identified as exhibits 2, 3, 5, 6, 7, 9, 10, 11, 12 and 13.

The note identified as exhibit 1 was made payable to "M. Gus Longacre and Joe Longacre." Plaintiff admits that it is "perhaps true that [this note] on its face, by use of the word 'and' created a tenancy in common," but he contends that the evidence shows that Gus Longacre intended that there should be a joint tenancy. The maker of the note testified that Gus Longacre "specified that he wanted that [note] made out to him, his name on it, and Joe's so if anything happened to him it would go to Joe." It appears that the money for this note came from several accounts in the Farm and Home Savings and Loan Association which were in the names of "James O. Longacre & Gus Longacre or either or survivor;" "Gus Longacre or Mrs. Kathleen Knowles or surv;" "Gus Longacre, Trust. for Billy Knowles;" and "Gus or Joe N. Longacre or surv." Apparently none of the persons named with Gus Longacre knew of these accounts, they supplied none of the money, and they executed no agreement with Gus Longacre or with the Farm and Home Savings and Loan Association. Gus Longacre furnished all the money to obtain this note, he retained full control and possession of it, and Joseph Longacre did not know of its existence. The language used does not indicate an intention to create a joint tenancy, and the circumstances indicate an intention on the part of Gus Longacre to retain exclusive control and possession during his lifetime. Under the rule announced in Napier v. Eigel, supra, no joint tenancy was created in this note.

This disposes of all the notes except two. Exhibit 4 was made payable to "Gus Longacre and/or Joe N. Longacre, or survivor," and exhibit 8 was made payable to "Gus Longacre and/or Joe N. Longacre, as joint tenants with right of survivorship and owners of this security." Exhibit 4 is the same as exhibit 2 except that the words "or survivor" were used instead

of "or assigns." The circumstances of the purchase and retention of control of the note were the same. The use of the words "or survivor" indicates an intention that the note should become the property of Joe Longacre if he survived Gus Longacre. But, this language is as consistent with an intent to make a testamentary bequest (which in this case would be ineffective because of non-compliance with Section 474.-320, V.A.M.S., pertaining to the execution of wills), as with an intent to make a present gift of an interest as joint tenant with equal right to share in the enjoyment of the property. When we consider the language used, it does not necessarily express an intent to create a present joint tenancy, and the circumstances indicate an intent on the part of Gus Longacre to retain complete control of the note during his life and that it should not become the property of Joe Longacre until his death. This does not result in the creation of a joint tenancy.

■ Exhibit 8, as do exhibits 2 and 4, contains the confusing and contradictory term "and/or," but it is followed by other language evidencing an intent to presently create a joint tenancy. As previously stated, the use of "and/or" is generally accepted to mean, when applied to the particular circumstances of this case, either "Gus Longacre and Joe Longacre" or "Gus Longacre or Joe Longacre." The latter expression is inconsistent with the phrase which follows, that is, "as joint tenants with right of survivorship and owners of this security." When we attribute the meaning to the "and/or" phrase which is consistent with the phrase following, we then have a clearly expressed intention on the part of Gus Longacre to create a joint tenancy in himself and Joe Longacre with the right of survivorship. The testimony of the maker of this note as to the circumstances of its execution is not particularly revealing, and was to the effect that Gus Longacre said he was making the note payable to himself and Joe, and that if anything happened to him "Joe wouldn't make it hard" on the maker.

The fact that exhibit 8 was drafted by Gus Longacre containing the phrase "as joint tenants with right of survivorship and owners of this security" indicates that he knew how to express an intention to create a joint tenancy (except for the ill-advised use of the "and/or" phrase), and this adds support to the conclusion previously reached concerning the bonds and other notes where such language was not used.

In Napier v. Eigel, supra, it was said: "Nor do we think that proof of intention alone, even to grant a present interest, would suffice without proof of conduct showing the carrying out or fulfillment of that intention." It was then added that acceptance could be presumed when the claimed donation was beneficial, and that "one joint owner may hold property for the benefit of all the joint owners," but "it was necessary to show a delivery of the property * * * actual, constructive or symbolical, by showing some conduct on her part indicating a change of the character of her possession from that of sole owner to that of a co-tenant." In the Napier case there was no physical change of the property. Solely owned property was placed in an envelope and a notation written thereon. There was no delivery of any kind. In this case solely owned money was delivered to the maker of the note with the instruction that there be executed and delivered to Gus Longacre in lieu of the money a note made payable as above set out. The acceptance by Joe Longacre of the interest in the note may be presumed. Gus Longacre could accept delivery and hold the note on behalf of himself and the named co-owner, and this conversion of solely owned money to a chose in action represented by a note was at least a symbolical delivery under the circumstances. It is true that in the same manner solely owned money was exchanged for the other notes and for the bonds, but the important and decisive difference is that in those other situations the language used in the notes and bonds, and also the circumstances, clearly indicated that there was no intention to create a

present joint interest in the copayee or co-owner.

We are not called upon in this appeal to determine what interest, if any, the copayee or co-owner received in the bonds and notes, if his interest was not that of a joint tenant, but only to determine whether the copayee or co-owner became the sole owner of the notes or bonds upon the death of Gus Longacre.

The judgment of the circuit court is affirmed as to all notes and bonds except the note identified as exhibit 8, and as to that note the judgment is reversed and remanded with directions that plaintiff be declared to be the sole owner thereof.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.