John L. HENRY, Appellant,

v.

Orville POWERS et al., Appellees.

No. 15528.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Nov. 13, 1969.

Rehearing Denied Dec. 4, 1969.

Hollis Massey, Columbus, for appellant.

Hodges, Moore & Gates, Morris Hodges, Columbus, Harry D. Larson, Eagle Lake, for appellees.

COLEMAN, Justice.

This is a suit for declaratory judgment concerning the ownership of a certificate of deposit issued by a bank payable to appellant or his deceased aunt, Mrs. E. W. Wright. Appellant and appellees are the beneficiaries under the will of Mrs. Wright. The trial court ruled that the certificate of deposit was an asset of her estate, and that title to the funds did not pass to appellant by right of survivorship.

The parties have stipulated to these facts:

"On March 7, 1963, Mrs. Wright deposited the sum of $10,000.00 with the First State Bank of Columbus, Texas, and received an interest bearing certificate of deposit due twelve months after date, payable to Mrs. E. W. Wright and/or John L. Henry. Such certificate was in words and figures as follows: The First State Bank, Columbus, Texas; Number A–5200; Columbus, Texas, March 7, 1963, $10,000.00. Mrs. E. W. Wright and/or John L. Henry has deposited in this bank ten thousand and no/100 dollars payable to either of themselves or order—Twelve—months after date on return of this certificate properly endorsed, interest at rate of three percent per annum from date. No interest after maturity. The bank is prohibited by Federal Law from paying this deposit in whole or in part before its maturity and from paying interest after maturity. The rate of interest payable hereunder is subject to change by the bank to such extent as may be necessary to comply with requirements of the Federal Reserve Board made from time to time pursuant to the Federal Reserve Act. Signed, Lorene Schmidt, Assistant Cashier. Not subject to check.

"Mrs. Wright retained possession of said certificate and renewed the same from year to year until March 31, 1967. Each renewal contained the same payee provisions as set forth in the certificate of March 7, 1963. She collected the interest each year for her own use.

"On March 31, 1967, Mrs. Wright renewed the above certificate for a period of twelve months and increased the principal amount thereof from $10,000.00 to $20,000.00, which certificate contained the same payee provisions as the certificate of March 7, 1963. On April 2, 1968, Mrs. Wright collected interest and renewed the $20,000.00 certificate for a period of twelve months. Such certificate of April 2, 1968, is in words and figures as follows: 'The First State Bank, Columbus, Texas, Number B–468, Columbus, Texas, April 2, 1968, $20,000.00. This Certifies that Mrs. E. W. Wright and/or John L. Henry, Social Security No. 452–68–6828, Address, Rock Island, Texas, has deposited in this Bank

payable in current funds to either of themselves the sum of Twenty Thousand and no/100 Dollars on the return of this certificate properly endorsed twelve months after date with interest at the rate of five percent per annum.' The rest of this is the provision which relate to automatic renewal, which the banks now have on these certificates. Signed by A. J. Brune, Jr., Vice President. 'This certificate is continuous, no renewal is necessary. Not subject to check.'

"Eight. 'The certificate for $20,000.00, dated April 2, 1968, was in the safety deposit box of Mrs. Wright at the First State Bank of Columbus, Texas, at the time of her death and same remains in the box in the possession of the executor of her estate. Such certificate was included by the executor in the inventory and appraisement returned by him in the Estate of Mrs. Wright. The executor and the beneficiaries under the will of Mrs. Wright, other than plaintiff, claim title to said certificate and the proceeds thereof as an asset of the Estate of Mrs. Wright. The executor has declined to deliver possession of such certificate to the plaintiff.' "

On March 8, 1963, Mrs. Wright wrote a letter to John L. Henry containing the following statements:

"* * * I renewed a time deposit at the First State Bank in Columbus yesterday and I had them put your name on with mine. Your chances are good to live longer than me. It is for $10,000.00 and it will be a nest-egg for you all. It draws 3% interest payable once yearly. I have several of these and the interest makes a living for me. I have one that pays 4½%. I think if you take care of this letter it will be all of the identification you would need. We don't know how much money will be necessary for us. I realize that, since Alice has been in the hospital so long. * * * "

At the time Mrs. Wright obtained this certificate she dealt with Mrs. Lorene Schmidt, the Assistant Cashier of the Bank. Mrs. Schmidt testified that the certificate was made out in the form requested by Mrs. Wright, who stated that, in case something happened to her, she wanted her nephew to receive the proceeds. Mrs. Schmidt also testified that she had never seen Mr. Henry come to the Bank to get money for Mrs. Wright.

Mr. A. J. Brune, vice president of the Bank, testified that he issued the 1968 certificate at the request of Mrs. Wright, who told him that she wanted it made out just like the 1967 certificate. There was no signature card signed in connection with the certificates of deposit.

Mr. Powers, the executor named in Mrs. Wright's will and one of the legatees, testified that as far as he knew Mr. Henry had not visited in the Rock Island community, where he and Mrs. Wright lived, in recent years, and that he did not know Mr. Henry. Mr. Powers was related to Mrs. Wright's deceased husband, as were all the legatees and divisees except Mr. Henry, who was the nephew of Mrs. Wright.

The appellees objected to the introduction of the letter quoted from, and to the statements made by Mrs. Wright to bank officials. The trial court took the objections along with the case and made no specific ruling on the objections.

The instrument in question is not negotiable, because it is not payable to order or to bearer. § 3.104(a) (4), Uniform Commercial Code, U.S.C.A. The rationale of Reese v. First National Bank, 196 S.W. 2d 48, 171 A.L.R. 516 (Tex.Civ.App., Galveston, ref., n. r. e.), is not applicable to the facts of this case. McClain v. Holder, 279 S.W.2d 105 (Tex.Civ.App., Galveston, 1955, ref. n. r. e.). The facts and circumstances pertinent to the transaction including the instruction given to the Savings and Loan Association at the time the account was opened were considered by the

Supreme Court in Quilter v. Wendland, 403 S.W.2d 335 (Texas 1966).

Parol testimony as to the circumstances under which contracts were entered into is admissible for the purpose of ascertaining the real intention of the parties. Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579 (1938); Ottjes v. Littlejohn, 285 S.W.2d 243 (Tex. Civ.App., Waco, 1956, ref., n. r. e).

In Tangren v. Ingalls, 12 Utah 2d 388, 367 P.2d 179 (1961), the court said: "Joint tenancies in bank accounts with right of survivorship have long been recognized * * *. However, in spite of recitals on the account cards, for reasons peculiar to such accounts, courts have been somewhat liberal in permitting proof as to what the true ownership of the funds is. * * *"

In Illinois parol evidence is admissible to overcome the presumption of donative intent arising from a deposit agreement setting up a joint account with right of survivorship. In re Mueth's Estate, 33 Ill.App.2d 449, 179 N.E.2d 695 (1962). See Erwin v. Felter, 283 Ill. 36, 119 N.E. 926 (1918).

" * * * In the instant case the intention of the parties was not 'clearly expressed' in their contract of deposit and by reason thereof the oral testimony of the secretary of the savings and loan company was admissible, not to vary the terms of the contract but to explain its ambiguity and the circumstances under which it was made." In re Fulk's Estate, 136 Ohio St. 233, 24 N.E.2d 1020 (1940).

In Kelberger v. First Federal Savings & Loan Ass'n, 270 Wis. 434, 71 N.W.2d 257 (1955), the court held that the determination of whether a contract has been made and what its effect is to be depends essentially upon the intention of the parties, particularly of the depositor. In their determination of the case, the court considered parol statements made by the deceased depositor.

The Supreme Court of Texas has held that where the language of a contract is ambiguous, the court can look to the record as a whole to determine just what the parties intended by the language employed. The court also stated: "No principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the courts to the interpretation placed upon a contract of uncertain meaning by the parties themselves. Courts rightfully assume that parties to a contract are in the best position to know what was intended by the language employed." James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558 (1950).

Certain well established principles of law must be applied. The parol evidence rule is a rule of substantive law, and testimony admitted in violation of that rule cannot be considered. Piper, Stiles & Ladd v. Fidelity and Deposit Co. of Md., 435 S.W.2d 934 (Tex.Civ.App., Houston 1969, ref., n. r. e.).

"If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstance surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the *intention* of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction." Lewis et al. v. East Texas Finance Company, 136 Tex. 149, 146 S.W.2d 977 (1941).

When an instrument does not by its terms plainly disclose the intention of the parties, it may be ascertained from the language of the instrument read in the light of the circumstances surrounding the transaction. Parol evidence is admis-

sible to explain an ambiguity when it is consistent with the writing, but not to vary its terms. The expressions of the parties simultaneous with the making of the contract are never treated as "surrounding circumstances". Remington Rand, Inc. v. Sugarland Industries, 137 Tex. 409, 153 S.W.2d 477 (1941).

The general rule is that any evidence which is relevant as bearing upon the sense which should be attached to the words used in a contract is admissible. The testimony of a party as to his understanding of the meaning of words used in writings has been admitted. However, evidence of declarations of the parties made out of court as to their intentions as to future writings (such as instructions given for drafting deeds or wills) or as to the sense which they attached to writings then being made, or theretofore made, come within the Parol Evidence Rule. McCormick and Ray, Texas Law of Evidence, § 1687, pp. 542–543.

The contract under consideration provides that Mrs. Wright and/or Mr. Henry deposited with the Bank $20,000.00, under an agreement that it would be repaid with interest after one year "to either of themselves", upon presentation of the certificate properly endorsed. It is apparent that the contract does not provide that one of the depositors shall be entitled to possession of the certificate to the exclusion of the other. Nor is there a specific provision as to the right to possession of the certificate on the death of one of the depositors. It is well settled that the ownership of the funds used to make the deposit can be shown by parol, and here it was stipulated that the funds were supplied by Mrs. Wright. In the absence of proof of the ownership of the funds deposited, the parties would be tenants in common as to the funds, which interest would descend to their estates on death by virtue of Sec. 46, Vernon's Ann. Tex.Probate Code 1955. However, on proof that Mrs. Wright deposited her money with the Bank, but accepted a certificate in return showing another as joint owner and providing that the deposit was payable to either of themselves, a question as to the intention of the depositor arises.

The words "payable to either of themselves" are of doubtful meaning in that it cannot be determined whether it was intended that one or the other of the parties referred to must endorse the certificate personally and present it for payment. Webster's International Dictionary, 2nd Ed., defines "themselves" : "An emphasized form of the personal pronoun for the third person plural. * * * It is used: *a* for emphasis * * * *b* specifically, for 'their true or normal selves'." The use of the word "themselves" instead of the word "them", which is more commonly used in such a context, is an indication of an intention that the certificate would be paid to one or the other of the persons named.

The testimony of Mrs. Schmidt relates to the instructions given her by the depositor, and can be considered. The certificates of deposit were printed forms. used by the Bank containing blanks. Mrs. Schmidt's testimony amounted to a generalized statement of the instructions given her as to how the blanks should be filled.

In First National Bank v. Rush, 210 S.W. 521 (Tex.Com.App.1919), it was held that a contract apparently unambiguous would be subject to construction if ambiguity appeared when read in the light of the situation of the parties and the circumstances as they then existed. The court quoted extensively from the case of Klueter v. Joseph Schlitz Brewing Co., 143 Wis. 347, 128 N.W. 43, 32 L.R.A., N.S., 383, a portion of which reads: "* * * The words of a contract, in themselves, may be plain, yet when applied to the situation with which it deals, not plain, the literal sense leading to such unreasonableness as to suggest that the parties probably did not so intend. * * *

To enable one to read the contract in the light of the subject matter and the effects and consequences, obviously evidence of facts and circumstances, not mere conversations, leading up to and concurrent with the making of the contract, is often necessary. * * *" See also, Anno. 33 A.L.R.2d 569; 42 A.L.R.2d 600.

Unless we determine that Mrs. Wright, by naming Mr. Henry a co-depositor in the certificate and by making it payable "to either of themselves", evidenced an intention to give Mr. Henry a contractual right to demand the deposit from the Bank on her death, these actions on her part were meaningless. The evidence shows that she lived in Texas and Mr. Henry lived in another state. Apparently he had not visited her for many years, but a regular correspondence was maintained. He was the only person related to her by blood mentioned in her will. Mr. Powers lived near her and she had sufficient confidence in him that she named him independent executor of her will. It is not reasonable, therefore, that Mr. Henry's name was placed on the certificate as a matter of convenience to Mrs. Wright or as a trustee for Mrs. Wright. Mrs. Wright was able to, and did, take care of her business affairs until shortly before her death.

After naming Mr. Henry as a co-depositor in 1963 Mrs. Wright kept the certificate in her possession. Each year she collected the interest and exchanged the certificate for a new one having essentially the same language. It is reasonable to infer that she did not intend that he have the use of the money represented by the certificate prior to her death.

▬ The certificate is not payable to Mrs. Wright *and* Mr. Henry, but to *either* of themselves, which indicates that the entire sum is payable to one or the other. The contractual rights of parties prior to the death of one of them are not ordinarily extinguished by death.

The reasoning set out above is adopted from that used by the court in Saylor v. Saylor, 389 S.W.2d 904 (Ky.1965). It is supported by the decision of the court in In re Staver's Estate, 218 Wis. 114, 260 N.W. 655 (1935), cited in Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962), as holding that the survivor was entitled to the proceeds of a certificate of deposit payable to Joseph Staver or Frank J. Staver. "The court pointed out that in the absence of clear evidence that the contract was a convenience account or was created under an express agreement that the third party would hold the proceeds for the benefit of the depositor or his heirs, the complete ownership must be held to be in the survivor." Krueger v. Williams, supra.

The courts of Ohio have adopted similar reasoning in reaching the same result as in Wisconsin and Kentucky. In the case of In re Fulk's Estate, 136 Ohio St. 233, 24 N.E.2d 1020 (1940), where the certificate of deposit recited a deposit by John Fulk or Ida Fulk and was payable "to self or to whom the same may be assigned", the court said that the word "or" rendered the contract vague and ambiguous, and that the intention of the parties could only be determined from the circumstances including testimony as to the result intended by use of the word "or" in the certificate. In that case, however, it appears that the court found a contract between the depositors granting each a right to withdraw all of the fund on deposit, which right vested when the contract was made and which survived the death of one of the depositors. The court also considered the fact that the money deposited was the joint earnings and savings of the depositors, and held that not only the right to withdraw "survived" the death of one of the parties, but that ownership of the funds represented by the certificates of deposit, vested in the survivor. In accord with this case: Goldston v. Randolph, 293 Mass. 253, 199 N.E. 896, 103 A.L.R. 1117 (1936); Helper State Bank v. Crus, 95 Utah 320, 81 P.2d 359 (1938); Kennedy v. Kennedy, 169 Cal. 287, 146 P. 647 (1915). But see Bauman

v. Walter, 160 Ohio St. 273, 116 N.E.2d 435 (1953).

In McClain v. Holder, 279 S.W.2d 105 (Tex.Civ.App., Galveston 1955, ref., n. r. e.), this Court refused to apply the third party beneficiary rationale of Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470 (1945), in determining the ownership of certain bonds issued to "W. Z. McClain or Lee McClain". In this case the bonds were acquired by the "joint industry of the spouses." By the terms of the bonds Dr. McClain and Mrs. McClain were directly participating parties, and the bonds were in their joint possession. The court said that there was no ambiguity; that the only thing not provided by the terms of the bonds is what will happen to the interest of one of the joint owners in case of death. The court held that the question was answered by the law of descent and distribution.

The case before us is clearly distinguishable and the third party beneficiary rule must be applied. See Comment 21 S.W.L.J., p. 323 et seq. Had words of survivorship been included in the certificate, the case would clearly be controlled by Quilter v. Wendland, supra, and Krueger v. Williams, supra. The general rules for the construction and interpretation of contracts should be held applicable to contracts of this nature. "In the construction or interpretation of contracts, the primary purpose and guideline, and indeed the very foundation of all the rules for such construction or interpretation, is the intention of the parties. Generally speaking, therefore, the fundamental and cardinal rule in the construction or interpretation of contracts is that the intention of the parties is to be ascertained and, if it can be done consistently with legal principles, is to be given effect. 17 Am. Jur.2d, Contracts, § 244, and cases cited. Comment, 18 Baylor Law Review 522 et seq.

The intention of the parties to this contract can be ascertained by a consideration of the terms of the instrument in light of the attendant circumstances. Mrs. Wright and the Bank intended that the entire proceeds of the certificate be payable to the survivor after the death of one of the named co-depositors. Effect should be given to this intention if the language used is sufficient to express it. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391 (1932); Marcus v. Armer, 117 Tex. 368, 5 S.W.2d 960, 60 A.L.R. 672 (1928). Effect can be given to this intention if the words "payable to either of themselves" are construed to mean payable to either of the persons named, thereby excluding the heirs, executors, or administrators of one who may have died.

The number of cases in which the precise point here presented has been decided is small. From the Annotation found in 149 A.L.R. at page 879 et seq., and other annotations noted therein, it must be concluded that there is a conflict of authority as to whether a donee beneficiary can recover even where words of survivorship are found in the writing. The reasons for the failure to permit recovery by the donee are various. The theory of recovery by the donee as a beneficiary of a contract between the donor and the banking institution is not discussed in most of the cases found.

It is our view that it was the intention of Mrs. Wright by her contract with the Bank to vest in Mr. Henry the right to collect the certificate and retain as his own the proceeds thereof, and that this intention can be given effect without doing violence to the language of the certificate. The facts in evidence are not in dispute. The interpretation of and the construction to be given the contract is a question of law.

The trial court erred in determining that John L. Henry was not entitled to recover as his property the certificate of deposit in litigation, and in declaring it to be an asset of the Estate of Mrs. Maude

Wright. The judgment should have declared John L. Henry owner of the certificate and entitled to possession of it.

Reversed and rendered.